# IN THE SUPREME COURT OF TEXAS

═══════════

No. 12-0772

═══════════

ZACHRY CONSTRUCTION CORPORATION, PETITIONER,

v.

PORT OF HOUSTON AUTHORITY
OF HARRIS COUNTY, TEXAS, RESPONDENT

═══════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTEENTH DISTRICT OF TEXAS

═══════════════════════════════════════════

**Argued November 6, 2013**

CHIEF JUSTICE HECHT delivered the opinion of the Court, in which JUSTICE GREEN, JUSTICE GUZMAN, JUSTICE DEVINE, and JUSTICE BROWN joined.

JUSTICE BOYD filed a dissenting opinion, in which JUSTICE JOHNSON, JUSTICE WILLETT, and JUSTICE LEHRMANN joined.

The common law permits a contractor to recover damages for construction delays caused by the owner, but the parties are free to contract differently. A contractor may agree to excuse the owner from liability for delay damages, even when the owner is at fault. The contractor thereby assumes the risk of delay from, say, an owner's change of plans, even if the owner is negligent. But can a no-damages-for-delay provision shield the owner from liability for deliberately and wrongfully interfering with the contractor's work? Before this case, a majority of American

jurisdictions—including Texas courts of appeals, courts in all but one jurisdiction to consider the issue, and five state legislatures—had answered no. We agree with this overwhelming view and also conclude that the answer is the same if the owner is a local governmental entity for which immunity from suit is waived by the Local Government Contract Claims Act.[1]

Contractors are usually paid as work progresses and, in exchange for payment, must waive liens and claims related to the work paid for. But does such a general waiver release a claim the contractor has already asserted? Not, we think, unless the claim is specifically mentioned or the intent to do so is clear.

Our conclusions require us to reverse the judgment of the court of appeals[2] and remand the case to that court for further proceedings.

# I[3]

Petitioner, Zachry Construction Corporation, contracted to construct a wharf on the Bayport Ship Channel for respondent, the Port of Houston Authority of Harris County, Texas. The wharf would be a concrete deck supported by piers, extending out over the water. It would be used for loading and unloading ships carrying containerized goods and would be long enough—1,660

---

[1] TEX. LOC. GOV'T CODE §§ 271.151-.160.

[2] 377 S.W.3d 841 (Tex. App.—Houston [14th Dist.] 2012).

[3] The evidence in this case was hotly disputed at almost every turn. We do not pause in this rehearsal of the proceedings to note each disagreement. In reviewing any case tried to a jury, we must view the evidence "in the light most favorable to the verdict"—in this case a verdict for the petitioner—"crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not" and so summarize the evidence in that light. *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 819 (Tex. 2012) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005)).

feet—for two ships to dock stern to bow. It would be built in five sections, each 135 feet wide and 332 feet long. The channel was to be dredged to a depth of 40 feet beneath the wharf and surrounding area, and revetment placed along the shore beneath the wharf to prevent erosion. The total cost was $62,485,733.

The contract made Zachry an independent contractor in sole charge of choosing the manner in which the work would be conducted. Specifically, Section 5.10 of the contract provided:

> The Port Authority shall not have the right to control the manner in which or prescribe the method by which the Contractor [Zachry] performs the Work. As an independent Contractor, the Contractor shall be solely responsible for supervision of and performance of the Work and shall prosecute the Work at such time and seasons, in such order or precedence, and in such manner, using such methods as Contractor shall choose . . . .

The provision benefitted the Port, insulating it from the liability to which it would be exposed were it exercising control over Zachry's work.[4] Still, the Port was fully engaged in reviewing Zachry's plans and overseeing construction.

Zachry's plan was innovative. It would use soil dredged from the channel to construct an 8-foot-wide earthen berm starting from the shore at either end of the worksite, extending out toward the center of the channel, then running parallel to the shore, forming a long, flat U-shaped wall in the channel around the construction area. Zachry would install a refrigerated pipe system in the wall and down into the channel floor that would carry supercooled brine, freezing the wall to make it impenetrable to the water in the channel. Zachry would then remove the water from the area between

---

[4] *See, e.g., Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 214 (Tex. 2008) ("Generally, an owner or occupier does not owe a duty to ensure that independent contractors perform their work in a safe manner. But one who retains a right to control the contractor's work may be held liable for negligence in exercising that right.") (citations omitted).

the wall and the shore. In this way, Zachry could work "in the dry", using bulldozers and other land equipment for the excavation and revetment work. Another advantage to this freeze-wall approach was that it would lower diesel emissions and require fewer nitrous oxide credits under environmental laws, giving the Port more flexibility in other construction projects. Zachry believed this approach would make the work less expensive and allow it to be completed more quickly.

And time was of the essence to the Port. Work began in June 2004 and was to be completed in two years. But two sections of the wharf had to be completed within 20 months—by February 2006—so that a ship from China could dock, delivering cranes to be used on the wharf. Zachry agreed to pay $20,000 per day as liquidated damages for missing the deadlines.

Nine months into the project, the Port realized that it would need two 1,000-foot berths to accommodate the ships it ultimately expected to service. A sixth 332-foot section would have to be added to the wharf. As a practical matter, only Zachry could perform the additional work, and Zachry and the Port began discussions on a change order. To complete the two sections of the wharf needed by February 2006, and to continue to work "in the dry", Zachry proposed to build another freeze-wall—a cutoff wall—though the middle of the project, perpendicular to the shoreline out to the existing wall, splitting the project into two parts. Zachry would finish the west end where the ship from China would dock, remove the wall barricading water from that area, then continue working on the east end "in the dry".

The Port had reservations about this plan. Near the shore, the cutoff wall would have to be built through the area where piers had already been driven into the channel floor. The Port's engineers were concerned that freezing the ground near the piers might destabilize them, weakening

the wharf and making it unsafe. But the Port was also concerned that if it rejected Zachry's plan, Zachry might simply refuse to undertake the addition of a sixth section. So the Port did not raise its concerns with Zachry. Zachry, for its part, had already identified the issue, but its own engineers had concluded that any piers that might be affected could be insulated from the frozen ground. Change Order 4, using Zachry's approach to add a sixth section of the wharf at a cost of $12,962,800, was finalized September 27, 2005.

Two weeks later, the Port ordered Zachry to revise and resubmit its plans without the cutoff wall. The practical effect of the Port's order was to refuse to allow construction of the cutoff wall. Zachry protested that, under Section 5.10 of the contract, the Port had no right to determine the method and manner of the work, but the Port would not budge. Zachry's only option was to finish the westmost sections in time for the ship from China to dock, then remove the wall altogether and continue to work "in the wet", which would delay completion of the project and increase its cost.

In negotiating Change Order 4, the Port had promised not to impose liquidated damages for delay as long as the ship from China could dock when it arrived, though the Port had refused to put its promise in writing. Nevertheless, after the ship successfully docked, the Port began withholding liquidated damages from Zachry's payments. Eventually the Port desisted, but not until it had withheld $2.36 million. Zachry completed the project in January 2009, more than two-and-one-half years after the contract deadline.

In November 2006, several weeks after the Port refused to allow construction of the cutoff wall, Zachry sued. Zachry eventually claimed some $30 million in damages from delays caused by

the Port. The Port countered that Section 5.07 of the contract precluded delay damages. That provision states:

> [Zachry] shall receive no financial compensation for delay or hindrance to the Work. In no event shall the Port Authority be liable to [Zachry] or any Subcontractor or Supplier, any other person or any surety for or any employee or agent of any of them, for any damages arising out of or associated with any delay or hindrance to the Work, regardless of the source of the delay or hindrance, including events of Force Majeure, AND EVEN IF SUCH DELAY OR HINDRANCE RESULTS FROM, ARISES OUT OF OR IS DUE, IN WHOLE OR IN PART, TO THE NEGLIGENCE, BREACH OF CONTRACT OR OTHER FAULT OF THE PORT AUTHORITY. [Zachry's] sole remedy in any such case shall be an extension of time.

Zachry argued, and the trial court ultimately agreed, that such a no-delay-damages provision could not be enforced if the Port's intentional misconduct caused the delay.

Zachry also sought recovery of the $2.36 million in delay damages withheld by the Port. The trial court held that the contract's liquidated damages provisions were invalid, and the Port has not challenged that ruling on appeal. But the Port responded that Zachry's claim to the liquidated damages was precluded by the releases it executed to obtain the periodic payments from which liquidated damages were withheld. The releases shared language stating:

> [Zachry] hereby acknowledges and certifies that [the Port] has made partial payment to [Zachry] on all sums owing on Payment Estimate Number [____] and that it has no further claims against [the Port] for the portion of the Work completed and listed on the Schedule of Costs in Payment Estimate Number [____].[5]

---

[5] There are releases in other forms, at least one of which specifically acknowledged, and excluded any effect on, contract claims at issue in pending litigation between the parties. The release for Payment Estimate Number 35 provided that the parties agreed "that Zachry Construction Corporation's execution of this Lien Release . . . does not in any way release or modify the parties' rights and obligations under the Phase 1A Wharf and Dredging Contract or constitute a release of any claim or claims that the parties may present in the Lawsuit with respect to Phase 1A Wharf and Dredging Contract."

6

The trial court concluded that this language did not unambiguously release Zachry's claim to the liquidated damages withheld and asked the jury to decide what effect it had.

After a three-month trial, the jury found that the Port breached the contract by rejecting Zachry's cutoff wall design, causing Zachry to incur $18,602,697 in delay damages.[6] The jury also found that the delay "was the result of the Port's . . . arbitrary and capricious conduct, active interference, bad faith and/or fraud."[7] The jury failed to find that Zachry had released its claim to the

---

[6] The jury was asked to find damages for "[t]he balance due and owed by the Port, if any, under the Contract, including any amount owed as compensation for any increased cost to perform the work as a direct result of Port-caused delays, and . . . [t]he amount owed, if any, for additional work that Zachry was directed to perform by the Port in connection with the Contract." The jury found that the percentage of damages for hindrance or delay, as opposed to additional work, was 58.13%. The Port and Zachry have since stipulated that 100% of the damages found by the jury were for hindrance or delay.

[7] In assessing damages, the jury was instructed as follows:

You are instructed that § 5.07 of the Contract precludes Zachry from recovering delay or hindrance damages, if any, unless you find that the delay or hindrance damages, if any, resulted from a delay or hindrance that was the result of the Port's actions, if any, that constituted arbitrary and capricious conduct, active interference, bad faith and/or fraud.

"Arbitrary and capricious" means willful and unreasoning action without due consideration and in disregard of the facts, circumstances, and rights of other parties involved.

"Active interference" means affirmative, willful action that unreasonably interferes with the other party's compliance with the contract. "Active interference" requires more than a simple mistake, error in judgment, lack of total effort, or lack of complete diligence.

"Bad faith" is conscious doing of a wrong for a dishonest purpose.

"Fraud" occurs when

1.     a party makes a material misrepresentation,

2.     the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion,

3.     the misrepresentation is made with the intention that it should be acted on by the other party, and

4.     the other party suffers injury as a result of its reliance on the misrepresentation.

7

$2.36 million liquidated damages the Port withheld, but found that the Port was entitled to offset $970,000 for defective wharf fenders. The trial court rendered judgment for Zachry on the verdict.

Both the Port and Zachry appealed. The court of appeals held that the no-delay-damages provision of the contract barred Zachry's recovery of delay damages,[8] that Zachry unambiguously released its claims to $2.205 million of the liquidated damages withheld,[9] and that the Port was entitled to the $970,000 found by the jury for defective wharf fenders.[10] The court reversed the judgment for Zachry and rendered judgment for the Port, awarding it the $10,697,750 in attorney fees found by the jury.[11]

We granted Zachry's petition for review.[12]

## II

Zachry argues that the no-damages-for-delay provision of the contract (Section 5.07) is invalid. The Port disagrees but also argues that even if the provision has no effect, the contract is otherwise silent on the recovery of delay damages, and the Local Government Contract Claims Act

---

"Misrepresentation" means a promise of future performance made with an intent, at the time the promise was made, not to perform as promised, and the promise of future performance is that the Port would comply with the terms of Change Order 4.

[8] 377 S.W.3d 841, 850-851 (Tex. App.—Houston [14th Dist.] 2012).

[9] *Id*. at 857-858. The court was divided on this issue.

[10] *Id*. at 861. Since the $155,000 in liquidated damages to which Zachry had not released its claim was completely offset by the $970,000 for the defective fenders, Zachry recovered nothing.

[11] *Id*. at 865. Section 3.10 of the contracts states: "If [Zachry] brings any claim against the Port Authority and [Zachry] does not prevail with respect to such claim, [Zachry] shall be liable for all attorneys' fees incurred by the Port Authority as a result of such claim."

[12] 56 Tex. Sup. Ct. J. 864 (Aug. 23, 2014).

("the Act")[13] does not waive governmental immunity from suit for any recovery a contract does not itself provide for. The court of appeals concluded that the no-damages-for-delay provision is enforceable and thus found it unnecessary to reach the immunity issue.[14] That approach was impermissible. Immunity "implicates a court's subject-matter jurisdiction over pending claims",[15] and "'[w]ithout jurisdiction the court cannot proceed at all in any cause; it may not assume jurisdiction for the purpose of deciding the merits of the case.'"[16] We must consider first whether the Act waives a local governmental entity's immunity from suit on a contract claim for delay damages the contract does not call for.

The issue has two parts. One is whether the Act's limitations on recovery help define and restrict the scope of the waiver of immunity. If not, those limitations have no role in determining a court's jurisdiction over a claim.[17] If so, as we conclude, the second part of the immunity issue is whether the delay damages Zachry seeks are permitted by the Act, so that the Port's immunity from suit is waived. We conclude they are.

---

[13] TEX. LOC. GOV'T CODE §§ 271.151-.160.

[14] 377 S.W.3d at 865 n.25. The Port asserted governmental immunity in the trial court but did not request a ruling.

[15] *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex. 2012).

[16] *Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 578 (Tex. 2013) (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (internal quotation marks omitted) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998))).

[17] The effect of the Act's limitations on recovery is important, though not in this case, in responding to a governmental entity's plea to the jurisdiction, the ruling on which is subject to interlocutory appeal. TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8). If the limitations do not determine the scope of the waiver of immunity, an assertion of a claim on a contract covered by the Act would be enough to defeat the jurisdictional plea. Otherwise, a plaintiff would also be required to show that the damages claimed are permitted by the Act.

9

**A**

The Act waives immunity from contract suits for local governmental entities, such as the

Port.[18] Section 271.152 of the Act states:

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into *a contract subject to this subchapter* waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, *subject to the terms and conditions of this subchapter*.[19]

A "contract subject to this subchapter" includes "a written contract stating the essential terms of the

agreement for providing goods or services to the local governmental entity that is properly executed

on behalf of the local governmental entity".[20] The contract between the Port and Zachry qualifies.

The "terms and condition of this subchapter" referred to in Section 271.152 are found in the

Act's other nine sections. Section 271.153 states:

> (a)     Except as provided by Subsection (c), the total amount of money awarded in an adjudication brought against a local governmental entity for breach of a contract subject to this subchapter is limited to the following:
>
> > (1)     the balance due and owed by the local governmental entity under the contract as it may have been amended, including any amount owed

---

[18] The Act defines a "local governmental entity" as "a political subdivision of this state, other than a county or a unit of state government [as that term is defined elsewhere]," "including a . . . special-purpose district or authority, including any . . . navigation district . . . ." TEX. LOC. GOV'T CODE § 271.151(3). The Port—known until 1971 as the Harris County Houston Ship Channel Navigation District—is a navigation district created in 1927 under the authority of article XVI, section 59 of the Texas Constitution, with the authority to sue and be sued. *Guillory v. Port of Houston Auth.*, 845 S.W.2d 812, 812-813 (Tex. 1993); *see also Jones v. Texas Gulf Sulphur Co.*, 397 S.W.2d 304, 306-307 (Tex. Civ. App.—Houston 1965, writ ref'd n.r.e.) (concluding in part that the Houston Ship Channel's immunity from *tort liability* was not waived by a "sue and be sued" clause). In 1970, the Court held that the same "sue and be sued" clause waived a navigation district's governmental immunity from *suit. Mo. Pac. R.R. Co. v. Brownsville Navigation Dist.*, 453 S.W.2d 812 (Tex.1970). The Port would then have been subject to suit, and possible contract liability, until the *Missouri Pacific* decision was overruled in *Tooke v. City of Mexia*, 197 S.W.3d 325, 328-331 (Tex. 2006).

[19] TEX. LOC. GOV'T CODE § 271.152 (emphasis added).

[20] *Id.* § 271.151(2)(A).

10

as compensation for the increased cost to perform the work as a direct result of owner-caused delays or acceleration;

> (2)     the amount owed for change orders or additional work the contractor is directed to perform by a local governmental entity in connection with the contract;

> (3)     reasonable and necessary attorney's fees that are equitable and just; and

> (4)     interest as allowed by law, including interest as calculated under Chapter 2251, Government Code.

> (b)     Damages awarded in an adjudication brought against a local governmental entity arising under a contract subject to this subchapter may not include:

> (1)     consequential damages, except as expressly allowed under Subsection (a)(1);

> (2)     exemplary damages; or

> (3)     damages for unabsorbed home office overhead.

> (c)     Actual damages, specific performance, or injunctive relief may be granted in an adjudication brought against a local governmental entity for breach of a contract described by Section 271.151(2)(B).[21]

Section 271.154 provides for enforcement of contractual adjudication procedures.[22] Section 271.155 preserves defenses other than immunity.[23] Section 271.156 limits the Act's waiver of immunity to

---

[21] *Id.* § 271.153.

[22] *Id.* § 271.154 ("Adjudication procedures, including requirements for serving notices or engaging in alternative dispute resolution proceedings before bringing a suit or an arbitration proceeding, that are stated in the contract subject to this subchapter or that are established by the local governmental entity and expressly incorporated into the contract or incorporated by reference are enforceable except to the extent those procedures conflict with the terms of this subchapter.").

[23] *Id.* § 271.155 ("This subchapter does not waive a defense or a limitation on damages available to a party to a contract, other than a bar against suit based on sovereign immunity.").

suits filed in state court.[24] Section 271.157 makes clear that the waiver of immunity does not extend to tort claims.[25] Section 271.158 provides that the Act only waives immunity and does not grant it.[26] And Section 271.160 precludes a finding of joint enterprise.[27]

Whether the various provisions of the Act define the scope of the waiver of immunity depends on the statutory text. As a rule, a modifier like the last "subject to" phrase in Section 271.152 applies to the nearest reasonable referent.[28] The candidates are "contract", "claim", "adjudicating", and "waives". We do not think the phrase modifies "contract". Earlier in the sentence, the Act is made applicable to any "contract subject to this subchapter", and it would be needlessly redundant to reiterate a few words later that the contract is subject to the Act's terms and conditions.[29] Nor do we think the phrase modifies "claim". Section 271.158,[30] for example, provides only that the Act does not grant immunity and says nothing about the nature of the claim for which immunity is waived. And we do not think the "subject to" phrase modifies "adjudicating". If it did,

---

[24] *Id.* § 271.156 ("This subchapter does not waive sovereign immunity to suit in federal court.").

[25] *Id.* § 271.157 ("This subchapter does not waive sovereign immunity to suit for a cause of action for a negligent or intentional tort.").

[26] *Id.* § 271.158 ("Nothing in this subchapter shall constitute a grant of immunity to suit to a local governmental entity.").

[27] *Id.* § 271.160 ("A contract entered into by a local government entity is not a joint enterprise for liability purposes.").

[28] *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 152 (2012).

[29] *Sultan v. Mathew*, 178 S.W.3d 747, 751 (Tex. 2005) ("We must avoid, when possible, treating statutory language as surplusage.").

[30] TEX. LOC. GOV'T CODE § 271.158.

12

only the adjudicatory process would be governed by the Act's terms and conditions. This reading might make sense for the recovery limits and preservation of procedures and defenses provided in Sections 271.153,[31] 271.154,[32] and Section 271.155,[33] respectively. Those three sections relate to the litigation and adjudication of a claim. But the other four sections, limiting the Act's coverage to suits in state court on contract claims, providing that immunity is not granted, and precluding a finding of joint enterprise, have little, if anything, to do with the adjudication on claims. These sections—271.156,[34] 271.157,[35] 271.158,[36] and 271.160,[37] respectively—relate to the scope of immunity rather than the conduct of litigation.

The "subject to the terms and conditions" phrase in Section 271.152 incorporates the other provisions of the Act to define the scope of its waiver of immunity. The waiver does not extend to tort suits, suits in federal court, or allow recovery beyond that permitted by Section 271.153. But Section 271.152, as qualified by this "subject to" phrase also does not preclude other defenses or other contractual procedures, or confer immunity or suggest joint enterprise. The "subject to" phrase most reasonably refers to "waives", thus making the provisions of the Act limitations on the waiver

---

[31] TEX. LOC. GOV'T CODE § 271.153.

[32] *Id.* § 271.154.

[33] *Id.* § 271.155.

[34] *Id.* § 271.156.

[35] *Id.* § 271.157.

[36] *Id.* § 271.158.

[37] *Id.* § 271.160.

of immunity. Section 271.152 must be read as follows: "A local governmental entity . . . waives sovereign immunity to suit . . . subject to the terms and conditions" of the Act.

We reached this result in *Tooke v. City of Mexia*[38] without the analysis just laid out because it seemed obvious. The Tookes sued the City of Mexia for breach of contract, "asserting that they had relied on a three-year term in purchasing equipment. They claimed unspecified damages, but requested jury findings only on lost profits and attorney fees".[39] They did not claim that the City failed to pay for work actually performed; rather, they sought recovery only for lost profits they would have made had the contract continued—"consequential damages excluded from recovery under [Section 271.153]."[40] Even though the Tookes' contract claim fell within Section 271.152,[41] we concluded—because they did not "claim damages within [Section 271.153's] limitations"—that "the City's immunity from suit on the Tookes' claim has not been waived."[42] This was true even though the Tookes might have proved that the City breached the contract.

The text of Section 271.152 and our decision in *Tooke* ought to have settled the matter, but courts of appeals have read our decision in *Kirby Lake Development, Ltd. v. Clear Lake City Water Authority*[43] to retreat from *Tooke*. There, developers sued an area water authority for reimbursement

---

[38] 197 S.W.3d 325 (Tex. 2006).

[39] *Id*. at 330.

[40] *Id*. at 346.

[41] *Id*. at 329-330.

[42] *Id*. at 346.

[43] 320 S.W.3d 829 (Tex. 2010).

14

of part of their costs of building water and sewer facilities, which the authority had agreed to pay out of voter-approved bond funds.[44] No bonds had been approved, but the developers claimed that the water authority had breached the contract by campaigning against approval, thereby forestalling its reimbursement obligation.[45] The water authority argued in part that because no bonds had been approved, its obligation to reimburse the developers had not been triggered, nothing was "due and owed" under Section 271.153(a)(1), and *for that reason*, immunity was not waived.[46] In other words, *because* there was no liability, there were no recoverable damages and, therefore, no waiver of immunity. But the premise—no liability—was disputed, and if the water authority had breached the contract by opposing bond approval, then the developers claimed only the reimbursement under the contract as damages. And such damages, we held, were "due and owed" under Section 271.153(a)(1).[47] "The purpose of section 271.153," we explained, "is to limit the amount due by a governmental agency on a contract once liability has been established, not to foreclose the determination of whether liability exists."[48] We did not suggest that Section 271.153 permits a waiver of immunity from suit for a claim for damages this Section prohibits altogether. The developers argued that they had damages recoverable under Section 273.153;[49] they did not address,

---

[44] *Id.* at 833-834.

[45] *Id.* at 834 (re 2006 bond election); *see also Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 321 S.W.3d 1, 5 (Tex.App.—Houston [14th Dist.] 2008) ("*Kirby III*") (re 1998 elections), *aff'd*, 320 S.W.3d at 843-844.

[46] 320 S.W.3d at 839-840; Brief of Respondent Clear Lake City Water Authority at 38 (No. 08-1003).

[47] 320 S.W.3d 839-840.

[48] *Id.* at 840.

[49] 320 S.W.3d 829, *passim*; Reply Brief of Petitioners Kirby Lake Development, Ltd., et al. at 11-14.

and we did not consider, whether immunity would have been waived for their claim of breach even if they sought only damages not recoverable under Section 271.153. We would not have engaged in such an analysis without acknowledging the conflict with our opinion in *Tooke*.[50]

The Austin Court of Appeals has laid out the case for confining the scope of the Act's waiver to Section 271.152 in its opinion in *City of San Antonio v. Lower Colorado River Authority*.[51] *LCRA* reasons that immunity from suit and immunity from liability are distinct concepts, that the former may be waived for a claim on which a governmental entity is not liable, and that the Act serves this very purpose.[52] We agree with all but the conclusion. As we have explained, Section 271.153's limitations on recovery are incorporated into Section 271.152 by its last "subject to" clause and are thereby conditions on the Act's waiver of immunity. We disagree with *LCRA* that this reading of the Act makes its waiver of immunity dependent on ultimate liability. The Act waives immunity for contract claims that meet certain conditions: the existence of a specific type of contract, a demand for certain kinds of damages, a state forum, etc. The waiver does not depend on the outcome, though it does require a showing of a substantial claim that meets the Act's conditions. *LCRA* argues that this view of the Act makes Section 271.153 a grant of immunity, a construction precluded by Section

---

[50] In *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 412-413 (Tex. 2011), Sharyland contracted to build a water-supply system for the City of Alton. Sharyland sued the City for breach, claiming damages for injury to its system caused by contractors engaged by the City under another contract to build a sanitary sewer system. We concluded that while the claim was covered by Section 271.152 and was therefore one for which immunity was waived, the damages sought had nothing to do with the contract between Sharyland and the City and thus were "not a 'balance due and owed' under *that* contract" recoverable under Section 271.153. *Id.* at 413. As in *Kirby Lake*, however, the issue whether Section 271.153 is jurisdictional did not arise, and we did not consider it.

[51] 369 S.W.3d 231 (Tex. App.—Austin 2011, no pet.).

[52] 369 S.W.3d at 235-238.

16

271.158. But again, Section 271.153 does not add immunity that Section 271.152 takes away; Section 271.152 uses Section 271.153 to further define to what extent immunity has been waived.

By "substantial" claim we mean, as we held in *Texas Department of Parks and Wildlife v. Miranda*, that the claimant must plead facts with some evidentiary support that constitute a claim for which immunity is waived, not that the claimant will prevail.[53] In *Tooke*, the only damages claimed were precluded by Section 271.153, and therefore immunity was not waived. Had the Tookes claimed payment for work done, immunity would have been waived, regardless of whether the Tookes could prevail, as long as the Tookes had some supporting evidence.

We conclude that the Act does not waive immunity from suit on a claim for damages not recoverable under Section 271.153.[54]

---

[53] 133 S.W.3d 217, 226-228 (Tex. 2004) ("When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. We construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent. If . . . the issue is one of pleading sufficiency [] the plaintiffs should be afforded the opportunity to amend [unless] the pleadings affirmatively negate the existence of jurisdiction . . . . However, if a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised . . . . If the evidence creates a fact question . . . the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder." (citations omitted)).

[54] We disapprove the following cases to the extent they are to the contrary: *Santa Rosa Indep. Sch. Dist. v. Rigney Const. & Dev., LLC*, No. 13-12-00627-CV, 2013 WL 2949566, at *5 (Tex. App.—Corpus Christi June 13, 2013, pet. denied) (mem. op.); *Roma Ind. Sch. Dist. v. Ewing Const. Co.*, No. 04-12-00035-CV, 2012 WL 3025927, at *4 (Tex. App.—San Antonio July 25, 2012, pet. denied) (mem. op.); *Corpus Christi Indep. Sch. Dist. v. TL Mech.*, No. 13-11-00624-CV, 2012 WL 1073299, at *3 (Tex. App.—Corpus Christi Mar. 29, 2012, pet. denied) (mem. op.) (note, however, that the court noted that plaintiff sought only contract damage and expressly did not claim any amount for lost profits); *City of San Antonio ex rel. San Antonio Water Sys. v. Lower Co. River Auth.*, 369 S.W.3d at 236–238; *City of N. Richland Hills v. Home Town Urban Partners, Ltd.*, 340 S.W.3d 900, 909-910 (Tex. App.—Fort Worth 2011, no pet.); *Jones v. City of Dallas,* 310 S.W.3d 523, 527–528 (Tex.App.—Dallas 2010, pet. denied) (note, however, that the court addressed an additional issue arising because the contract specifically provided for "lost profits" damages); *Clear Lake City Water Auth. v. MCR Corp.*, No. 01-08-00955-CV, 2010 WL 1053057, *10–11, (Tex. App.—Houston [1st Dist.] Mar. 11, 2010, pet. denied) (mem. op.); *Dallas Area Rapid Transit v. Monroe Shop Partners, Ltd.*, 293 S.W.3d 839, 842 (Tex. App.—Dallas 2009, pet. denied) (note, however, that there was a dispute over whether there was a "balance due and owed"); *City of Houston v. S. Elec. Servs., Inc.*, 273 S.W.3d 739, 744 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (note, however, that there was a dispute over whether the "balance due and owed" would include increased labor

**B**

Under Section 271.153(a)(1), the "amount of money awarded . . . for breach of contract" includes "the balance due and owed . . . under the contract" as amended, "including any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays".[55] Section 271.153(b) precludes recovery of consequential damages, "except as expressly allowed under Subsection (a)(1)".[56] The Port contends that no balance can be due and owed under a contract unless the contract expressly calls for payment.

No such requirement can be found in the statute's text. The phrase, "balance due and owed/owing", is not defined in the Act, and the Legislature has not used it except in three other statutes waiving governmental immunity, where it is also undefined: the State Contract Claims Act,[57]

---

costs); *City of Mesquite v. PKG Contracting, Inc.*, 263 S.W.3d 444, 448 (Tex. App.—Dallas 2008, pet. denied) (note, however, that the court pointed out that the record did not establish that the claim was solely for damages excluded by the statute, and cited *Tooke*).

[55] TEX. LOC. GOV'T CODE § 271.153(a)(1).

[56] *Id.* § 271.153(b).

[57] TEX. GOV 'T CODE § 2260.003(a) ("The total amount of money recoverable on a claim for breach of contract under this chapter may not . . . exceed an amount equal to the sum of: (1) the balance due and owing on the contract price; (2) the amount or fair market value of orders or requests for additional work made by a unit of state government to the extent that the orders or requests for additional work were actually performed; and (3) any delay or labor-related expense incurred by the contractor as a result of an action of or a failure to act by the unit of state government or a party acting under the supervision or control of the unit of state government.").

18

the County Contract Claims Act,[58] and the State Agency Contract Claims Act.[59] The word "due" simply means "owing or payable"[60] and "owing" means "unpaid".[61] A "balance due and owed . . . under the contract" is simply the amount of damages for breach of contract payable and unpaid. Direct damages for breach—"the necessary and usual result of the defendant's wrongful act"[62]—certainly qualify.

Section 271.153(a)(1) does not require the "balance due and owed . . . under the contract" to be ascertainable from the contract because, for one thing, this Section expressly includes "any amount owed as compensation . . . for owner-caused delays", an amount which cannot be determined in advance, when the contract is executed. To "include" means "[t]o contain as a part of

---

[58] TEX. LOC. GOV'T CODE § 262.007(b) ("The total amount of money recoverable from a county on a claim for breach of the contract is limited to the following: (1) the balance due and owed by the county under the contract as it may have been amended, including any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays or acceleration; (2) the amount owed for change orders or additional work required to carry out the contract; (3) reasonable and necessary attorney's fees that are equitable and just; and (4) interest as allowed by law.").

[59] TEX. CIV. PRAC. & REM. CODE § 114.004(a) ("The total amount of money awarded in an adjudication brought against a state agency for breach of an express provision of a contract subject to this chapter is limited to the following: (1) the balance due and owed by the state agency under the contract as it may have been amended, including any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays or acceleration if the contract expressly provides for that compensation; (2) the amount owed for written change orders; (3) reasonable and necessary attorney's fees based on an hourly rate that are equitable and just if the contract expressly provides that recovery of attorney's fees is available to all parties to the contract; and (4) interest at the rate specified by the contract or, if a rate is not specified, the rate for postjudgment interest under Section 304.003(c), Finance Code, but not to exceed 10 percent.").

[60] See BLACK'S LAW DICTIONARY 609 (10th ed. 2014).

[61] Id. at 1279.

[62] Basic Capital Mgmt. v. Dynex Commercial, Inc., 348 S.W.3d 894, 901 (Tex. 2011) ("Consequential damages are those damages that result naturally, but not necessarily, from the defendant's wrongful acts. They are not recoverable unless the parties contemplated at the time they made the contract that such damages would be a probable result of the breach. Thus, to be recoverable, consequential damages must be foreseeable and directly traceable to the wrongful act and result from it.") (quoting Stuart v. Bayless, 964 S.W.2d 920, 921 (Tex. 1998) (per curiam)).

19

something."[63] "[A]mount[s] owed as compensation for . . . owner-caused delays", allowed by

Subsection (a)(1), are consequential damages that are recoverable by law, not merely contractual

right.[64] Delay damages can be a "balance due and owed" only if that phrase is not limited to amounts

stated in the contract.[65]

Furthermore, Section 271.153(b) excludes from the "[d]amages awarded . . . under a

contract" consequential damages except as allowed in Subsection (a)(1). If the latter provision

_____

[63] *See* BLACK'S LAW DICTIONARY at 880; *Chickasaw Nation v. United States*, 534 U.S. 84, 89 (2001) ("To 'include' is to 'contain' or 'comprise as part of a whole.' WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 609 (1985).").

[64] *See Jensen Constr. Co. v. Dallas Cnty.*, 920 S.W.2d 761, 770 (Tex. App.—Dallas 1996, writ denied) ("Generally, a contractor is entitled to recover damages for losses due to delay and hindrance of work if the contractor proves: (1) its work was delayed or hindered; (2) it suffered damages because of the delay or hindrance; and (3) the owner of the project was responsible for the act or omission which caused the delay or hindrance. However, no damage for delay provisions may preclude recovery of delay damages by the contractor." (citations and internal quotation marks omitted)), *overruled in part on other grounds by Travis Cnty. v. Pelzel & Assocs., Inc.*, 77 S.W.3d 246, 251 (Tex. 2002); *Beaumont v. Excavators & Constructors, Inc.*, 870 S.W.2d 123, 132-134 (Tex. App.—Beaumont 1993, writ denied); *Indus. Constr. Mgmt. v. DeSoto Indep. Sch. Dist.*, 785 S.W.2d 160, 162 (Tex. App.—Dallas 1989, no writ); *Shintech Inc. v. Group Constructors, Inc.*, 688 S.W.2d 144, 148 (Tex. App.—Houston [14th Dist.] 1985, no writ); *City of Houston v. R.F. Ball Constr. Co., Inc.*, 570 S.W.2d 75, 77 (Tex. Civ. App.—Houston [14th Dist.] 1978, writ ref'd n.r.e.); *Housing Auth. of Dallas v. Hubbell*, 325 S.W.2d 880, 884-885, 890-891 (Tex. Civ. App.—Dallas 1959, writ ref'd n.r.e.) (holding NDFD clause did not bar delay damages found to have been caused by owner arbitrarily and capriciously—defined as "willful and unreasoning action without due consideration and in disregard of the facts, circumstances, and the rights of other parties involved"—even though NDFD clause barred delay damages "from any cause"); *U.S. ex rel. Wallace v. Flintco*, 143 F.3d 955, 964-965 (5th Cir. 1998) (holding NDFD clause did not preclude recovery of delay damages caused by owner's active interference with the contractor's performance, without considering impact of NDFD language); *see generally* P. V. Smith, Annotation, *Right of Building or Construction Contractor to Recover Damages Resulting from Delay Caused by Default of Contractor*, 115 A.L.R. 65 (1938).

[65] The dissent argues that because an amount cannot be "due and owed" unless it is "provided for or contemplated in" the contract, delay damages, which are expressly included in Section 271.153(a)(1), must also be "provided for or contemplated in" the contract. *Post* at ___. If the premise were true, then the conclusion would follow. "A including B" usually means that A is the larger group. But the dissent's "provided for or contemplated in" limitation simply is not in or suggested by the text. The "including" phrase proves the flaw in the dissent's position: "*any* amount as compensation for . . . delay damages" (emphasis added), which amount may or may not be provided for in the contract, cannot be included in "the balance due and owed . . . under the contract" if that phrase is limited to amounts provided for in the contract. Of course, "any Texas city, including Athens", to use the dissent's example, is limited to one, but the example, like the dissent's statutory construction, assumes a limitation to Texas cities when that is the very issue in dispute. A more apt example is "a city, including *any* named Athens", which is a longer list.

20

limited recovery to amounts stated in the contract, Subsection (b) would be surplusage: a claimant could recover all amounts stated in the contract, and all consequential damages stated in the contract. Read together, Subsections (a)(1) and (b) allow recovery of contract damages, including delay damages, but excluding other consequential damages. Nothing in the rest of Section 271.153 suggests that recoverable damages must be stated in the contract.[66]

In support of its argument, the Port cites two sentences from the remarks made by the bill sponsor introducing the Local Government Contract Claims Act during a House committee hearing. But we have repeatedly held that "[s]tatements made during the legislative process by individual legislators or even a unanimous legislative chamber are not evidence of the collective intent of the majorities of both legislative chambers that enacted a statute."[67] The Port also cites our opinion in

---

[66] The dissent argues that damages "under" a contract are only those "provided for or contemplated in" the contract, but "under the contract" is used to refer generally to damages available on a contract claim. *See, e.g., CVN Group, Inc. v. Delgado*, 95 S.W.3d 234, 244 (Tex. 2002) (referring to "liability for money damages under the contract"); *Great Am. Ins. Co. v. N. Austin Mun. Util. Dist. No. 1*, 950 S.W.2d 371, 373 (Tex. 1997) (referring to the need for "extrinsic evidence . . . to calculate damages under the contract"). Further, parties entering into a contract presumably contemplate that contract damages will be available if that contract is breached. *See City of Houston v. Williams*, 353 S.W.3d 128, 141 (2011) ("[I]t is 'settled that the laws which subsist at the time and place of the making of a contract . . . form a part of it, as if they were expressly referred to or incorporated in its terms.'") (suit by retired firefighters based in part on city ordinances could be characterized as one for breach of contract under Section 271.152); *Wessely Energy Corp. v. Jennings*, 736 S.W.2d 624, 626 (Tex. 1987) ("The law[] existing at the time a contract is made becomes a part of the contract and governs the transaction."); *Kerr v. Galloway*, 64 S.W. 858, 860 (Tex. 1901) ("Under a familiar rule, frequently announced, the law enters into the contract, and becomes a part of it."); *see also Hardware Dealers Mut. Ins. Co. v. Berglund*, 393 S.W.2d 309, 315 (Tex. 1965) ("Contracting parties generally select a judicially construed clause with the intention of adopting the meaning which the courts have given to it."). The dissent argues that limiting recovery to contractual damages is no limit at all, but damages are but one item in a list that includes attorney fees and interest, even if not provided for in the contract. The dissent argues that allowing recovery of contractual damages under Section 271.153(a)(1) renders subsection (2) superfluous, but the latter provision clarifies that change orders can be the basis for recovery, even if it were argued that they were not "under the contract".

[67] *Molinet v. Kimbrell*, 356 S.W.3d 407, 414 (Tex. 2011); *accord In re Allcat Claims Serv., L.P.*, 356 S.W.3d 455, 466-467 (Tex. 2011); *Robinson v. Crown Cork & Seal Co., Inc.*, 335 S.W.3d 126, 191-192 (Tex. 2010) (Wainwright, J., dissenting); *AT&T Commc'ns of Tex., L.P. v. Sw. Bell Tel. Co.*, 186 S.W.3d 517, 528-529 (Tex. 2006); *Gen. Chem. Corp. v. De La Lastra*, 852 S.W.2d 916, 923 (Tex. 1993).

*Kirby Lake*, where we stated that the reimbursement obligation stated in the contract was "due and owed".[68] But we did not analyze the phrase, and we certainly did not suggest that damages not set out in the contract cannot be "due and owed".[69]

More than half a century ago, we observed that "[t]he universal rule for measuring damages for the breach of a contract is just compensation for the loss or damage actually sustained."[70] While the Legislature clearly intended to limit the recovery of consequential damages on contract claims permitted by the Act,[71] nothing in the Act suggests that the Legislature intended to create a unique and somehow limited standard for measuring direct damages for breach of contract. Generally, a contractor has a right to delay damages for breach of contract. The parties are free to modify or exclude it by agreement, but unless they do, the right provided by law is as much a part of the

---

[68] *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 840 (Tex. 2010).

[69] The dissent also relies on *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407 (Tex. 2011), for its argument that recoverable damages must be "provided for or contemplated in" the contract. In that case a city contracted for construction of a water supply system, and later the contractor sued for the cost of remediating injury to the system caused by the city's sewer contractors. *Id.* at 410-411. We concluded that the damages sought "were not those provided for or contemplated in the Water Supply Agreement and [were] not a 'balance due and owed' under that contract. Nor [were] these costs the 'direct result of owner-caused delays or acceleration . . . .'" *Id.* at 413. The dissent argues that the phrase, "provided for or contemplated in", was really intended to be a standard for determining whether an amount is "due and owed . . . under" a contract. But the Court clearly gave two independent reasons for concluding that the claimed damages were not recoverable: they were not "provided for or contemplated in" the contract, "and" they were not "due and owed under" the contract. Sharyland's claimed damages were not a "balance due and owed" because they were completely unrelated to the Water Supply Agreement. And by adding, "nor" were the damages for delay, referencing the "including" phrase in Section 157.053(a)(1), we suggested that if the damages had been for delay, they would have been recoverable even if neither "due and owed under" nor "provided for or contemplated in" the contract. We treated the "including" phrase in the statutory provision as stating independently that delay damages are recoverable. Instead of supporting the dissent, *Sharyland* contradicts it.

[70] *Stewart v. Basey*, 245 S.W.2d 484, 486 (Tex. 1952).

[71] "Consequential damages are those damages that result naturally, but not necessarily, from the defendant's wrongful acts." *Basic Capital Mgmt. v. Dynex Commercial, Inc.*, 348 S.W.3d 894, 901 (Tex. 2011); *El Paso Mktg., L.P. v. Wolf Hollow I, L.P.*, 383 S.W.3d 138, 144 (Tex. 2012). Delay damages are consequential damages.

22

contract as the rights the contract expressly creates.[72]

We conclude that the Local Government Contract Claims Act waives immunity for a contract claim for delay damages not expressly provided for in the contract.[73] We now turn to whether Zachry's claim is barred by the no-damages-for-delay provision of the contract.

## III

We held in *Green International, Inc. v. Solis* that a contractor may generally agree to assume the risk of construction delays and not seek damages.[74] But we noted that the court of appeals in *City of Houston v. R.F. Ball Construction Co.*[75] had listed what it called "generally recognized

---

[72] *See supra* note 66.

[73] The dissent notes that the State Agency Contract Claims Act, enacted in 2013, contains a provision similar to Section 271.153(a)(1) except that the "including" phrase permits recovery of delay damages only "if the contract expressly provides for that compensation". TEX. CIV. PRAC. & REM. CODE § 114.004(a)(1) (Act of May 26, 2013, 83rd Leg., R.S., ch. 1260, H.B. 586, § 1, http://www.legis.state.tx.us/tlodocs/83R/billtext/pdf/HB00586F.pdf#navpanes=0 (last visited August 25, 2014)). The dissent argues that the proviso states what is implicit in Section 271.153(a)(1). But if anything, the addition of the proviso suggests that it was not intended in the other three statutes waiving immunity from suit on contract claims.

It should also be noted that the State Contract Claims Act was amended in 2005 (Act of May 27, 2005, 79th Leg., R.S., ch. 988, H.B. 1940, § 1, 2005 Tex. Gen. Laws 3292), the same year the Local Government Contract Claims Act was adopted (Act of May 23, 2005, 79th Leg., R.S., ch. 604, H.B. 2039, § 1, 2005 Tex. Gen. Laws 1548), to provide for recovery of delay damages, but did so using the word "and" instead of "including". *Supra* note 59. Using the dissent's argument, one might contend that both statutes intended that delay damages be recoverable whether or not provided for by contract.

[74] 951 S.W.2d 384, 387 (Tex. 1997).

[75] 570 S.W.2d 75 (Tex. Civ. App.—Houston [14th Dist.] 1978, writ ref'd n.r.e.); see also *Shintech Inc.*, 688 S.W.2d 144, 148 (Tex. App.—Houston [14th Dist.] 1985, no writ) ("a contractor is entitled to recover damages from an owner for losses due to delay and hindrance of its work if it proves: (1) that its work was delayed or hindered, (2) that it suffered damages because of the delay or hindrance, and (3) that the owner was responsible for the act or omission which caused the delay or hindrance") (citing *R. F. Ball*).

23

exceptions" to the enforcement of such agreements

> when the delay: (1) was not intended or contemplated by the parties to be within the purview of the provision; (2) resulted from fraud, misrepresentation, or other bad faith on the part of one seeking the benefit of the provision; (3) has extended for such an unreasonable length of time that the party delayed would have been justified in abandoning the contract; or (4) is not within the specifically enumerated delays to which the clause applies.[76]

And we also noted[77] that the court of appeals in *Green* had identified a fifth exception "based upon active interference" with the contractor "or other wrongful conduct", including "arbitrary and capricious acts"—"'willful and unreasoning actions,' 'without due consideration' and 'in disregard of the rights of other parties.'"[78] The issues in *Green* did not require us to determine whether the courts of appeals in that case and *Ball* were correct in their statement of the law. Zachry contends that the second and fifth exceptions apply here.

The jury found that Zachry's delay damages resulted from the Port's "arbitrary and capricious conduct, active interference, bad faith and/or fraud" as those terms were defined in the charge.[79] The court of appeals concluded that, assuming such conduct fell within the second exception, the exception could not apply if the parties intended the no-damages-for-delay provision to cover the Port's conduct.[80] The provision stated that Zachry could not recover from the Port "any damages

---

[76] *Green*, 951 S.W.2d at 387 (citing *Ball*, 570 S.W.2d at 77 & n.1).

[77] *Id.* at 388.

[78] *Argee Corp. v. Solis*, 932 S.W.2d 39, 63 (Tex. App.—Beaumont 1995), *rev'd on other grounds sub. nom. Green Int'l, Inc. v. Solis*, 951 S.W.2d 384 (Tex. 1997); *Housing Auth. of Dallas v. Hubbell*, 325 S.W.2d 880, 891 (Tex. Civ. App.—Dallas 1959, writ ref'd n.r.e.).

[79] *Supra* note 7.

[80] 377 S.W.3d 841, 850 (Tex. App.—Houston [14th Dist.] 2012).

arising out of or associated with any delay or hindrance" to its work, even if due to the Port's

"negligence, breach of contract or other fault", and that its "sole remedy in any such case" would be

"an extension of time." By "other fault", the court concluded, the parties intended to include the kind

of misconduct by the Port found by the jury in awarding damages.[81] "As harsh as this result seems,"

the court explained, the parties must be bound by their agreement.[82] Rejecting Zachry's argument

that enforcing the no-damages-for-delay provision made the contract illusory, allowing the Port to

delay performance in perpetuity with impunity, the court responded simply that it would not deprive

the Port of its bargain.[83]

As a matter of textual interpretation, it is doubtful whether the rule of *ejusdem generis* would

allow "other fault", following "negligence" and "breach of contract", to include the kind of

deliberate, wrongful conduct the Port was found by the jury to have engaged in.[84] That interpretation

is especially doubtful, given the context in which no-damages-for-delay provisions are used. An

amicus brief explains:

> Based on their years of experience, education, and training, [contractors] can assess
> potential delaying events when estimating and bidding public works. For example,
> they can make a judgment on the quality and completeness of the plans and
> specifications, determine potential delays resulting from material shortages, analyze

---

[81] *Id.* at 850.

[82] *Id.*

[83] *Id.* at 851-852.

[84] *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 663 (Tex. 2010) ("[T]he principle of ejusdem generis warns against expansive interpretations of broad language that immediately follows narrow and specific terms, and counsels us to construe the broad in light of the narrow."); *see also* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 199 (2012) ("Where general words follow an enumeration of two or more things, they apply only to persons or things of the same general kind or class specifically mentioned".).

historical weather data for potential delays, and assess possible delays from soil conditions by studying soil testing reports furnished by most owners. However, they cannot assess potential delays that may arise due to an owner's direct interference, willful acts, negligence, bad faith fraudulent acts, and/or omissions.[85]

Regardless, the purpose of the second *Ball* exception is to preclude a party from insulating himself from liability for his own deliberate, wrongful conduct.

We have indicated that pre-injury waivers of future liability for gross negligence are void as against public policy.[86] Generally, a contractual provision "exempting a party from tort liability for harm caused intentionally or recklessly is unenforceable on grounds of public policy."[87] We think the same may be said of contract liability. To conclude otherwise would incentivize wrongful conduct and damage contractual relations. This conclusion is supported by lower court decisions in Texas[88] and court decisions in at least 28 American jurisdictions.[89] We join this overwhelming

---

[85] Brief of the Associated General Contractors of Texas, Inc. as Amicus Curiae, at 2. In support of Zachry's petition for review, we received amicus briefs and letters from the Texas Aggregates and Concrete Association; the Texas Civil Justice League; Associated General Contractors of Texas; Texans for Lawsuit Reform; Zurich Surety; Associated Builders and Contractors of Texas; Associated General Contractors – Texas Building Branch; the National Electrical Contractors Association; the National Systems Contractors Association; and the American Subcontractors Association and the American Subcontractors Association of Texas. Amicus briefs in support of the Port have been submitted by The Texas Conference of Urban Counties; the City of Houston; the Texas Municipal League and the Texas City Attorneys Association; Harris County; Travis County; the City of Fort Worth; the City of Arlington; the City of Dallas; and the Dallas/Fort Worth Airport Board.

[86] *Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 687 (Tex. 2008) (Hecht, J., concurring); *Cromwell v. Hous. Auth. of Dallas*, 495 S.W.2d 887, 889 (Tex. 1973); *see also Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 219-222 (Tex. 2002) (suggesting that, generally, a tariff or contract provision including a pre-injury waiver of liability for gross negligence or willful misconduct may be so unreasonable as to violate public policy). Zachry also points out that we have noted that the courts of appeals have "found a pre-injury release of gross negligence invalid as against public policy". *Memorial Med. Ctr. of E. Tex. v. Keszler*, 943 S.W.2d 433, 435 (Tex. 1997).

[87] RESTATEMENT (SECOND) OF CONTRACTS § 195(1) (1981).

[88] *Argee Corp. & Seaboard Sur. Co. v. Solis*, 932 S.W.2d 39, 52-53 (Tex. App.—Beaumont 1995), *rev'd on other grounds sub nom. Green Int'l, Inc. v. Solis*, 951 S.W.2d 384 (Tex. 1997); *see also Alamo Cmty. College Dist. v. Browning Constr. Co.*, 131 S.W.3d 146, 162 (Tex. App.—San Antonio 2004, pet. dism'd by agr.); *City of Houston v. R.F. Ball Constr. Co., Inc.*, 570 S.W.2d 75, 77 (Tex. Civ. App.—Houston [14th Dist.] 1978, writ ref'd n.r.e.); *Hous.*

26

consensus. The Port argues that the cases from other jurisdictions are inapposite because those jurisdictions all recognize a party's duty of good faith in performing a contract, and Texas does not.[90] But the law need not impose a duty of good faith on a party to prohibit him from attempting to escape liability for his future, deliberate, wrongful conduct. The Port argues that withholding enforcement of a no-damages-for-delay provision is in derogation of freedom of contract. But that freedom has limits. "As a rule, parties have the right to contract as they see fit as long as their

*Auth. of Dallas v. Hubbell*, 325 S.W.2d 880, 884-885, 890-891 (Tex. Civ. App.—Dallas 1959, writ ref'd n.r.e.).

[89] *See, e.g., U.S. Steel Corp. v. Mo. Pac. R.*, 668 F.2d 435, 438-439 (8th Cir. 1982) (Arkansas law); *Dynalectric Co. v. Whittenberg Constr. Co.*, No. 5:06-CV-00208-JHM, 2010 WL 4062787, at *8 (W.D. Ky. Oct. 15, 2010); *Law Co. v. Mohawk Const. & Supply Co., Inc.*, 702 F. Supp. 2d 1304, 1325-1327 (D. Kan. 2010); *Kiewit Constr. Co. v. Capital Elec. Constr. Co.*, No. 8:04 CV 148, 2005 WL 2563042, at *7-8 (D. Neb. Oct. 12, 2005); *Pellerin Constr., Inc. v. Witco Corp.*, 169 F.Supp.2d 568, 583-587 (E.D. La. 2001); *RaCON, Inc. v. Tuscaloosa Cnty.*, 953 So.2d 321, 339-340 (Ala. 2006); *Tricon Kent Co. v. Lafarge N.A., Inc.*, 186 P.3d 155, 160-161 (Colo. App. 2008); *White Oak Corp. v. Dept. of Transp.*, 585 A.2d 1199, 1203 (Conn. 1991); *Wilson Contracting Co. v. Justice*, No. 508 CIV.A.1974, 1981 WL 377680, at *1-2 (Del. Super. Ct. Jan. 22, 1981); *Blake Constr. Co. v. C.J. Coakley Co.*, 431 A.2d 569, 578-579 (D.C. 1981); *Newberry Square Dev. Corp. v. S. Landmark, Inc.*, 578 So.2d 750, 752 (Fla. Dist. Ct. App. 1991); *M Electric Corp. v. Phil-Gets Int'l Trading Corp.*, No. CVA12-014, 2012 WL 6738260, at *9-11 (Guam Dec. 27, 2012); *Grant Constr. Co. v. Burns*, 443 P.2d 1005, 1012 (Idaho 1968); *J & B Steel Contractors, Inc. v. C. Iber & Sons, Inc.*, 642 N.E.2d 1215, 1222 (Ill. 1994); *Owen Constr. Co. v. Iowa St. Dept. of Transp.*, 274 N.W.2d 304, 306-307 (Iowa 1979); *State Highway Admin. v. Greiner Eng'ng Sciences*, 577 A.2d 363, 372 (Md. Ct. Spec. App. 1990); *Phoenix Contractors, Inc. v. Gen. Motors Corp.*, 355 N.W.2d 673, 676-677 (Mich. Ct. App. 1984); *Tupelo Redev. Agency v. Gray Corp.*, 972 So.2d 495, 511-512 (Miss. 2007); *J.A. Jones Constr. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009, 1014-1016 (Nev. 2004); *Edwin J. Dobson, Jr., Inc. v. State*, 526 A.2d 1150, 1153 (N.J. Super. Ct. App. Div. 1987); *Corinno Civetta Constr. Corp. v. New York*, 493 N.E. 2d 905, 909-910 (N.Y. 1986); *Daniel E. Terreri & Sons, Inc. v. Mahoning Cty. Bd. of Comm'rs*, 786 N.E.2d 921, 928 (Ohio Ct. App. 2003); *Guy M. Cooper, Inc. v. E. Penn Sch. Dist.*, 903 A.2d 608, 613-614 (Pa. Commw. Ct. 2006); *Ayers-Hagan-Booth, Inc. v. Cranston Hous. Auth.*, No. C.A. 74-2897, 1975 WL 174130, at *2-5 (R.I. Super. Nov. 24, 1975); *U.S. v. Metric Constructors, Inc.*, 480 S.E.2d 447, 448-451 (S.C. 1997); *Thomas & Assoc. v. Metro. Gov't of Nashville*, No. M2001-00757-COA-R3-CV, 2003 WL 21302974, at *14 (Tenn. Ct. App. June 6, 2003); *English v. Fischer*, 660 S.W.2d 521, 522 (Tex. 1983); *W. Eng'rs, Inc. v. State Road Comm'n*, 437 P.2d 216, 217 (Utah 1968); *John E. Gregory & Son, Inc. v. A. Guenther & Sons Co.*, 432 N.W.2d 584, 586 (Wis. 1988). *But see Wes-Julian Constr. Corp. v. Commonwealth*, 223 N.E.2d 72, 76-77 (Mass. 1967). *See generally* Maurice T. Bruner, Annotation, *Validity and Construction of "No Damage" Clause with Respect to Delay in Building or Construction Contract*, 74 A.L.R.3d 187, 201 § 2[a] (1976) ("it is well established, apart from a single jurisdiction, that there are certain exceptions" to NDFD clauses).

[90] *English v. Fisher*, 660 S.W.2d 521, 522 (Tex. 1983).

agreement does not violate the law or public policy."[91] Enforcing such a provision to allow one party to intentionally injure another with impunity violates the law for the reasons we have explained. The Port also argues that Zachry is a sophisticated party, a very large construction company that can protect itself. But the law's protection against intentional injury is not limited to the helpless. Finally, the Port argues that the conduct found by the jury does not qualify for the exception. But the jury charge tracked the language of the second and fifth exceptions. The charge correctly described the misconduct that cannot be covered by a no-damages-for-delay provision.

Accordingly, we conclude that the no-damages-for-delay provision, Section 5.07 of the parties' contract, was unenforceable.

**IV**

Several issues remain.

*First:* Zachry's contends that it is entitled to recover the $2.36 million that the Port withheld as liquidated damages for Zachry's failure to meet deadlines. For each progress payment, Zachry executed a document entitled "Affidavit and Partial Release of Lien", which contained the following language:

> [Zachry] hereby acknowledges and certifies that [the Port Authority] has made partial
> payment to [Zachry] on all sums owing on Payment Estimate Number [___] and that

---

[91] *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 129 (Tex. 2004); *accord Sonny Arnold, Inc. v. Sentry Sav. Ass'n*, 633 S.W.2d 811, 815 (Tex.1982) (recognizing "the parties' right to contract with regard to their property as they see fit, so long as the contract does not offend public policy and is not illegal"); *Curlee v. Walker*, 244 S.W. 497, 498 (Tex. 1922) ("The law recognizes the right of parties to contract with relation to property as they see fit, provided they do not contravene public policy and their contracts are not otherwise illegal."); *James v. Fulcrod*, 5 Tex. 512, 520 (1851) ("That contracts against public policy are void and will not be carried into effect by courts of justice are principles of law too well established to require the support of authorities.").

28

it has no further claims against [the Port Authority] for the portion of the Work completed and listed on the Schedule of Costs in Payment Estimate Number [___].

Zachry contends that the releases covered only liens. The Port counters that the releases covered all claims for payment. The trial court concluded that the release language was ambiguous on the issue and charged the jury to determine its effect. The jury failed to find that the release language covered Zachry's claims for liquidated damages withheld by the Port. The court of appeals held that the releases unambiguously covered Zachry's claim for liquidated damages and reversed.[92] We agree that the releases are unambiguous, but we conclude that they do not cover Zachry's claim.

Section 6.07 of the contract conditioned the Port's obligation to make progress payments on Zachry's execution of "waivers and releases of liens" providing "that all amounts due and payable" to Zachry and all subcontractors and suppliers "have been paid in full" and that Zachry "waives, releases and relinquishes any lien . . . , security interest and claim for payment". The Port argues that the releases must be construed in light of this requirement because the contract and releases are related contracts and must be read together.[93] While Section 6.07 could be read to require Zachry to release its claims for liquidated damages withheld by the Port in order to obtain progress payments, that is not the issue. Had the Port insisted on express language to that effect, and had Zachry refused, the interpretation of Section 6.07 would be important. Now, however, the issue is not what releases Zachry was contractually required to execute, but the effect of the releases Zachry actually did execute.

[92] 377 S.W.3d 841.

[93] *City of Keller v. Wilson*, 168 S.W.3d 802, 811 (Tex. 2005).

The release forms were captioned "Affidavit and Partial Release of Lien". In the form language, Zachry acknowledged "partial payment . . . on all sums owing" on a specified invoice and stated that it had "no further claims against [the Port] for the portion of the Work completed and listed on" the invoice. The release plainly refers only to claims for work completed, not for liquidated damages withheld for delays—work *not* completed. Furthermore, Zachry actively disputed the Port's right to withhold liquidated damages from the first time the Port did so, and that dispute was never resolved. The purpose of progress payment releases is to ensure that the contractor will not accept payment for work performed and then insist on additional payment for that work. Zachry's releases can no more be interpreted to extend to its claim for liquidated damages the Port withheld than to its claim for delay damages. The jury failed to find that the releases *in fact* covered Zachry's claim. We agree, as a matter *of law*.

*Second:* The trial court did not award Zachry the entirety of the $2.36 million in withheld payments because the jury found that the Port was entitled to an offset of $970,000 as damages for Zachry's use of defective wharf fenders. Zachry contends that the evidence is legally insufficient to support the jury's finding.

To prove its claim for the offset, the Port submitted evidence that the wharf fenders, which protect vessels from damage during the mooring process, were supposed to last for 30 years but became corroded after only 90 days. The Port's expert witness testified that this occurred because the fenders were improperly sealed and, as a result, "the aluminum pores [] remain[ed] open [and] filled with sea water." A lab analysis and tests that a structural fabrication company conducted supported the expert's conclusion. Zachry contends that the evidence does not establish that it

breached the contract because the sealing or coating on the fenders was "thinned" at 25% in accordance with the contract specifications, and if more thinning was required then the blame lies with the specifications and not with Zachry. Even if there were a breach of contract, Zachry argues that the evidence does not establish that the fenders were in fact defective or that the breach caused the damages that the jury awarded.

Viewing the evidence in the light most favorable to the verdict, we cannot agree that the evidence was legally insufficient to support the jury's verdict. Although Zachry submitted evidence that tended to contradict the Port's evidence, we conclude that there was "more than a mere scintilla" of evidence on which a reasonable jury could find that Zachry breached its obligation to provide fenders that were supposed to last 30 years by providing fenders that began corroding within 90 days, and that the Port sustained damages in the amount of $970,000 as a result, entitling it to an offset against the damages recovered by Zachry.

*Third:* The contract provided that "[i]f [Zachry] brings any claim against the Port Authority and [Zachry] does not prevail with respect to such claim, [Zachry] shall be liable for all attorney's fees incurred by the Port Authority as a result of such claim." The jury found that the Port incurred $10.5 million in attorney fees as a result of Zachry's claim for delay damages, plus additional fees on appeal. Separately, the jury found that the Port incurred $80,250 in attorney fees as a result of Zachry's claim to recover the payments that the Port withheld as liquidated damages, plus additional fees on appeal. In light of our holdings that Zachry prevails on both its claims for delay damages and to recover part of the withheld payments, we reverse the court of appeals' judgment awarding the Port attorney fees.

*    *    *    *    *

We hold that Zachry's claim for delay damages is not barred by immunity or by the no-damages-for-delay provision of the contract. We also hold that Zachry is entitled to recover the liquidated damages withheld by the Port, but that there is evidence to support the jury's award of an offset. We conclude that the court of appeals erred in awarding the Port attorney fees. We reverse the court of appeals' judgment, and because the Port has raised a number of other issues, we remand the case to that court for further consideration.

_____
Nathan L. Hecht
Chief Justice

Opinion delivered: August 29, 2014