

# Fourth Court of Appeals
## San Antonio, Texas

### DISSENTING OPINION

No. 04-14-00429-CV

**CITY OF SAN ANTONIO**,
Appellant

v.

**CASEY INDUSTRIAL, INC.**,
Appellee

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2008-CI-06252
Honorable Michael E. Mery, Judge Presiding

Opinion by:     Sandee Bryan Marion, Chief Justice
Dissenting Opinion by:  Patricia O. Alvarez, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Patricia O. Alvarez, Justice
                Jason Pulliam, Justice

Delivered and Filed:  July 1, 2015

The majority assumes only *arguendo* that Casey raised a genuine issue of material fact on whether Casey complied with the contract's provisions to seek additional compensation, but it concludes Casey failed to raise a fact issue on any damages due for additional work CPS Energy directed it to perform.  Based on these conclusions, the majority decides CPS Energy's immunity was not waived, and the trial court erred by denying CPS Energy's plea to the jurisdiction.  Because Casey met its evidentiary burden and CPS Energy failed to conclusively disprove its immunity was waived, I would affirm the trial court's order.  Therefore, I respectfully dissent.

## PLEA TO THE JURISDICTION

In its plea to the jurisdiction, CPS Energy asserted its immunity from suit was not waived and it moved to dismiss Casey's claims. CPS Energy argued Casey failed to meet the statutory requirements to waive CPS Energy's immunity under Texas Local Government Code sections 271.152 and 271.153. *See* TEX. LOC. GOV'T CODE ANN. § 271.152 (West 2005); *id.* § 271.153 (West Supp. 2014). After Casey met its burden to raise a fact issue on waiver of immunity, then, as the movant, CPS Energy had to conclusively disprove any essential element of waiver. In reviewing the evidence, we take all of Casey's evidence as true, and resolve any doubts and make all reasonable inferences in its favor. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004). I address the evidence pertaining to the two sections' requirements.

## SECTION 271.152 REQUIREMENTS

### A.      Casey's Burden

Casey's burden was to plead facts supported by some evidence sufficient to raise a genuine issue of material fact that it met the requirements of section 271.152. *See Zachry Const. Corp. v. Port of Hous. Auth. of Harris County*, 449 S.W.3d 98, 110 (Tex. 2014). It pled that its suit was against CPS Energy, a local governmental entity; that CPS Energy entered into a contract with Casey; and its suit comprised claims for breach of that contract. I recite the supporting evidence.

- The City of San Antonio is a local governmental entity. *See* TEX. LOC. GOV'T CODE ANN. § 271.152 ("**local governmental entity**" (emphasis added)).

- Acting through CPS Energy, the City was authorized by statute to enter into a contract with Casey for the J.T. Deely power station modifications. *See id.* ("**authorized by statute . . . to enter into a contract**" (emphasis added)); *City of San Antonio ex rel. City Pub. Serv. Bd. of San Antonio v. Casey Indus., Inc.*, 381 S.W.3d 589, 596 (Tex. App.—San Antonio 2012, pet. denied) (citing TEX. LOC. GOV'T CODE ANN. § 271.119 ("Design-Build Contracts for Facilities")).

- It did so in August 2004. *See* TEX. LOC. GOV'T CODE ANN. § 271.152 ("**enters into a contract**" (emphasis added)); *Casey Indus.*, 381 S.W.3d at 596–97.

- In its pleadings, Casey (1) alleged that CPS Energy breached the August 2004 contract and (2) provided evidence of the executed contract and affidavits supporting its allegations of breach. Casey also provided evidence that contract provisions under paragraph 14.1.2 include procedures for CPS Energy or Casey to modify the scope of work, change the performance schedule, and seek an increase or decrease in the D/B contractor's (Casey's) compensation. It argued and pled evidence showing that it complied with the procedures to raise, discuss, and resolve a claim. *See* TEX. LOC. GOV'T CODE ANN. § 271.152 ("**claim for breach of contract**" (emphasis added)).

Taking Casey's evidence as true and making all reasonable inferences in its favor, I conclude Casey met its burden to raise a genuine issue of material fact that CPS Energy's immunity was waived under section 271.152. *See Miranda*, 133 S.W.3d at 228; *see also Zachry Const.*, 449 S.W.3d at 109 ("The waiver does not depend on the outcome, though it does require a showing of a substantial claim that meets the Act's conditions.").

## B.      CPS Energy's Burden

Although Casey met its burden, CPS Energy's plea to the jurisdiction could be granted if CPS Energy conclusively disproved any essential element of waiver of immunity. *See Miranda*, 133 S.W.3d at 226–28; *Elliott-Williams Co. v. Diaz*, 9 S.W.3d 801, 803 (Tex. 1999) ("The defendant as movant must disprove at least one of the essential elements of the plaintiff's causes of action to prevail on summary judgment."). To conclusively disprove any waiver of immunity, CPS Energy argued that Casey did not comply with what CPS Energy asserts are the applicable contract procedures, *e.g.*, contract Article 9.1 Change Orders. CPS Energy contended that the only contractual procedure to modify Casey's scope of work was the change order provision, Casey never requested a change order for the work in question, CPS Energy did not issue one, and therefore any additional work Casey did was not covered by a written contract. Thus, CPS Energy argues, without a written contract for the additional work, Casey did not meet section 271.152's requirements and CPS Energy's immunity was not waived.

## C.        Contract Provisions to Request Additional Compensation

But CPS Energy's view ignores other contract provisions that expressly create procedures for Casey to request additional compensation. I trace the path along the applicable contract articles and recite some of the evidence relating to each article.

### 1.        Article 14.1.2

In its January 3, 2006 letter, CPS Energy notified Wheelabrator that Wheelabrator was in default under the contract. Under Article 14.1.2, a default by Wheelabrator constitutes a *Force Majeure*.

> Provided D/B Contractor is not in Default itself, *a Default by Wheelabrator under Section 14.1.1*, which results in an impairment or frustration of D/B Contractor's Work through no fault of D/B Contractor, *shall be considered a "Force Majeure" event and will entitle D/B Contractor to request an extension of time and/or additional compensation by Notice to Owner as required in Section 9.1.3.*

(Emphasis added).

### 2.        Article 9.1.3

Wheelabrator's default—a *force majeure*—invokes Article 9.1.3's provisions.

> *D/B Contractor shall provide Owner with Notice of any circumstance described in Section 9.1.4* which D/B Contractor believes will entitle D/B Contractor to a Change Order modifying the Scope of Work, Project Schedule, Contract Price, or other obligations of D/B Contractor under this Agreement. *D/B Contractor shall bear the burden of establishing that it is entitled to such relief under Section 9.1.4*, that the relief sought is the minimum relief required, and that any monetary relief requested by D/B Contractor is in excess of any insurance proceeds recoverable by D/B Contractor. *Such Notice shall be issued within ten (10) Days after D/B Contractor's knowledge of a circumstance described in Section 9.1.4*, and such Notice shall describe such occurrence in detail. *Within ten (10) Days following delivery of such Notice, or such other period as may be agreed upon by the Parties, D/B Contractor shall submit to Owner a written estimate* (including detailed calculations supporting such estimates) of any adjustments to the Scope of Work (including adjustments to the Facility Guarantees or warranties), Project Schedule, Contract Price (including adjustments to the Schedule of Values and other obligations of D/B Contractor under this Agreement requested by it. Following Owner's receipt of such Notice, Owner shall determine whether it agrees with such adjustments to the Scope of Work, Project Schedule, Contract Price or any other obligations of D/B Contractor. *If Owner agrees with such adjustments, the Parties*

*shall execute an appropriate Change Order.* In the event that the Parties reach agreement on all terms of a Change Order except for a lump sum price, Owner may direct D/B Contractor to proceed with such additional Work with the price to be established in accordance with Section 9.1.5. *If Owner disagrees with such adjustments, the Parties shall attempt to negotiate an equitable resolution, failing which the Parties shall resolve such disagreement in accordance with Article 15.* Pending such resolution, the Owner shall issue a Construction Change Directive in accordance with Section 9.2.

(Emphasis added). Casey's December 30, 2005 letter advised CPS Energy that Wheelabrator's problems were costing Casey money, and if Wheelabrator failed to compensate Casey, "*Casey will formally notify CPS that your action is requested. At that time, Casey will request that CPS exercise your rights, through the Contract, **to compensate Casey for the recovery costs**.*" (emphasis added).

Even if the December 30, 2005 letter alone was not sufficient notice under Article 9.1.3, the record shows Casey had recurring project status meetings with CPS Energy and one may reasonably infer that Casey informed CPS Energy of Wheelabrator's performance issues. *E.g.*, Casey's December 30, 2005 letter to CPS Energy states Casey will give CPS Energy copies of the documents Casey issues to Wheelabrator regarding project progress; CPS Energy's January 3, 2006 letter referring to the "December 14, 2005 Weekly Construction Meeting." Further, CPS Energy declared Wheelabrator in default, and CPS Energy unquestionably knew that Wheelabrator was failing to perform and Wheelabrator's default would impair or frustrate Casey's work.

Taking Casey's evidence as true and making reasonable inferences in its favor, Casey gave CPS Energy written notice in accordance with Article 9.1.3 and Casey was entitled to request relief under Article 9.1.3. In such a circumstance, if the parties agree on relief, CPS Energy issues a change order. If the parties do not agree, then Article 15, Claims and Dispute Resolution, is invoked.

*3.        Article 15, Claims and Dispute Resolution*

Article 15.2.1 addresses claims procedures:

*A Claim is a demand* or assertion by the Parties, as a matter of right, adjustment or interpretation of Contract terms, *payment of money*, Extension of Time or other relief with respect to the terms of the Contract. *The term "Claim" also includes other disputes and matters in question between the Owner*, Wheelabrator *and/or D/B Contractor arising out of or relating to the Contract.*

(Emphasis added).

Article 15.2.2 addresses initiating a claim:

Claims must be *initiated within 10 days after occurrence of the event giving rise to such Claim* or within 10 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later. *Claims must be initiated by written notice to the other Parties.* Claims submitted to the Owner after the ten-day period will be rejected.

(Emphasis added).

Taking Casey's evidence as true and making all reasonable inferences in its favor, I conclude Casey's December 30, 2005 letter to CPS Energy, combined with Casey's project reports and CPS Energy's written declaration that Wheelabrator was in default, satisfied the written notice requirement.  *See Zachry Const.*, 449 S.W.3d at 110 (requiring the claimant to "plead facts with some evidentiary support that constitute a claim for which immunity is waived").   After intervening months and meetings, Casey's letter of August 3, 2007 states it has already tried the lower levels for dispute resolution, and it is seeking senior level review.   Casey attached documentation "in accordance with . . . Article 9 of the Contract" which "includes backup documentation to identify and support individual cost issues."  CPS Energy's letter of July 27, 2007 shows the items in dispute under Article 15.1.1.

Even assuming Casey did not meet the Article 15.2.2 notice requirement, CPS Energy may have waived notice.  *See Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) ("'Waiver is defined as 'an intentional relinquishment of a known right or intentional conduct inconsistent with

claiming that right.'" (quoting *Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987))). In its August 15, 2007 letter, CPS Energy acknowledged outstanding disputed items, requested more information on the claims, and participated in dispute resolution procedures under Article 15. I agree with the majority's conclusion that "[t]he 2007 correspondence indicates the parties' attempt to resolve their dispute pursuant to the contract's 'Clams and Dispute Resolution' provisions as set forth in Article 15 of the contract."

Article 15.2.4 addresses procedures for making a claim for "other reasonable grounds":

*If the D/B Contractor wishes to make a Claim for an increase in* either the Wheelabrator Contract Price or *D/B Contractor's Contract Price, or if the D/B Contractor believes additional cost is involved for reasons including, but not limited to*, (1) an order by the Owner to stop or repair Work where the D/B Contractor nor Wheelabrator was at fault, (2) in a situation in which the Work is considered additional to the Specifications, (3) a written order for a change in the Work issued by the Owner, or (4) *other reasonable grounds, written Notice as provided herein shall be given by the D/B Contractor before proceeding to execute the Work.*

(Emphasis added). This provision is not expressly tied to, or limited by, the change order procedure. It requires notice, but making reasonable inferences in Casey's favor based on the evidence in the record such as the correspondence and weekly project meetings, Casey either gave notice or CPS Energy waived the notice requirement.

Article 15.4.4 provides for redress from a rejected claim:

The Owner will approve or reject Claims by written decision, which shall state the reasons therefore and which shall notify the D/B Contractor of any change in the Contract Price or Contract Time, or both. *The* approval or *rejection of a Claim by the Owner shall be subject to dispute resolution as outlined in Section 15.1 prior to litigation*.

(Emphasis added).

Article 15.1, Procedure for Dispute Resolution, requires the parties to "use their Best Efforts in good faith to reach a reasonable and equitable resolution of the matter." If project level managers are unable to resolve the matter, it is referred to senior officers. If they cannot resolve

the matter, the parties must use their "Best Efforts in good faith" to agree on non-judicial resolution. If the dispute resolution fails, neither party may sue until at least thirty days after the senior officers received written notice of the dispute. Although Article 15.1 seeks to promote alternate dispute resolution and avoid litigation, it expressly anticipates the parties may seek relief in court.

Viewing the parties' evidence in the light most favorable to Casey, *Miranda*, 133 S.W.3d at 228, I conclude CPS Energy failed to meet its burden to disprove as a matter of law any essential element of section 271.152, *see Elliott-Williams Co.*, 9 S.W.3d at 803; *cf. Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 642 (Tex. 2012) (granting a plea to the jurisdiction on a claim because the governmental entity negated an essential element of plaintiff's claim and plaintiff failed to raise a fact question on the negated element). Because "Section 271.152 uses Section 271.153 to further define to what extent immunity has been waived," I next consider whether Casey's claimed damages are of the type recoverable under section 271.153. *See Zachry Const.*, 449 S.W.3d at 110.

## SECTION 271.153 REQUIREMENTS

### A.     Casey's Burden

To show CPS Energy's immunity was waived, Casey must also raise a genuine issue of material fact on whether its damages are recoverable under section 271.153. *See id.*; *Miranda*, 133 S.W.3d at 228. Casey may recover damages from CPS Energy's alleged breach of contract for "(2) the amount owed for change orders or *additional work the contractor is directed to perform by a local governmental entity in connection with the contract*." TEX. LOC. GOV'T CODE ANN. § 271.153(a) (emphasis added).

Disregarding the $150,000 per day liquidated damages provision, the majority states that "Casey points to no evidence of any directive from CPS Energy" to perform any additional work. But Casey's vice-president's affidavit averred that Casey performed work Wheelabrator—not Casey—was otherwise obligated to perform and includes letters between CPS Energy and Casey. For example, in an attachment to Casey's August 3, 2007 letter to CPS Energy, Casey quoted Article 20.20 of the contract: "[Casey] and its surety *shall bear no responsibility or liability for the Wheelabrator obligations*, Wheelabrator's design or the Performance Guarantees associated with the Wheelabrator portion of the Work." (emphasis added). Casey insisted that "as construction manager Casey bore no responsibility for ensuring Wheelabrator's performance," and Article 9.4 states that "[Casey] and Wheelabrator accepts [sic] the risk of mistake or error relating to the portion of their respective Work as outlined in [the Split Contract Matrix]." There is also evidence of weekly construction meetings and numerous letters between the parties addressing the scope and progress of the construction. Further, in its response to CPS Energy's motion to dismiss, Casey pled that "Casey followed a process that was directed by CPS, all the while reserving Casey's rights to bring a claim for the Wheelabrator-caused impacts associated with the default as acknowledged by CPS" and added that "Casey was continuously following CPS'[s] direction."

## B.    CPS Energy's Burden

To be entitled to a grant of its plea to the jurisdiction, CPS Energy's burden is to conclusively disprove CPS Energy directed Casey to perform additional work in connection with the contract. *See* TEX. LOC. GOV'T CODE ANN. § 271.153(a)(2); *Miranda*, 133 S.W.3d at 228. CPS Energy's evidence includes an affidavit that insists CPS Energy had little or no visibility into the Casey-Wheelabrator interactions. It also argued that as of August 2006 Casey had not raised any issues related to "the steel painting it performed which was within Wheelabrator's scope of

work or its costs related to an increase in steel quantities for the Project." But CPS Energy acknowledged that on May 2, 2007, Casey informed CPS Energy that Casey would seek compensation from CPS Energy for the steel painting costs. This evidence supports the reasonable inference that CPS Energy directed Casey to perform work that—at least in Casey's view—Casey was not otherwise obligated to perform by the contract.

Article 20.20 requires Casey to "act as the overall construction manager of the Project" and to "oversee Wheelabrator's . . . performance," but Casey insists the article's disclaimer that Casey "shall bear no responsibility or liability for the Wheelabrator obligations" shows Casey was not responsible for *performing* Wheelabrator's work. Given Casey's reliance on Article 20.20's disclaimer, it is not reasonable to infer that Casey volunteered to perform Wheelabrator's work at considerable expense to itself but at no cost to CPS Energy. To the contrary, considering the direct and circumstantial evidence, it is quite reasonable to infer that Casey performed Wheelabrator's work because CPS Energy directed Casey to do so. It was CPS Energy's burden to prove as a matter of law that in its many communications to Casey, including letters and project meetings, it did not direct Casey to perform the additional work. The evidence does not show CPS Energy met that burden.

CONCLUSION

It is undisputed that Wheelabrator defaulted and Casey performed some of the work originally assigned to Wheelabrator. CPS Energy seems to view Casey as a prime contractor with an obligation to perform Wheelabrator's work at no additional cost to CPS Energy. Casey sees itself as Wheelabrator's co-contractor, not its prime contractor, and Casey raises Article 20.20 as evidence it was not obligated to perform Wheelabrator's work without additional compensation.

Although many statements in CPS Energy's affidavits contradict assertions in, and reasonable inferences I draw from, Casey's evidence, this court must leave disputed questions of material fact to the fact-finder. *See Miranda*, 133 S.W.3d at 228. Casey argued and pled facts with supporting evidence that it complied with the contract's procedures to request additional compensation. Whether Casey can prove by a preponderance of the evidence that it actually complied with the contract's provisions is not the question before us. *See Zachry Const.*, 449 S.W.3d at 110 (restating the claimant's burden: "the claimant must plead facts with some evidentiary support that constitute a claim for which immunity is waived, not [prove] that the claimant will prevail").

Our question is whether, viewing all the evidence in the light most favorable to Casey and making all reasonable inferences in its favor, Casey raised a genuine issue of material fact on whether its claims meet the statutory requirements to waive CPS Energy's immunity. The evidence shows Casey raised a genuine issue of material fact on whether it asserted a claim for breach of a written contract, and thus Casey met its burden under section 271.152. The evidence also shows Casey raised a genuine issue of material fact on whether CPS Energy directed Casey to perform "additional work . . . in connection with the contract," and thus Casey met its burden under section 271.153.

Because Casey met its burdens, and CPS Energy failed to conclusively disprove any essential element of waiver, I would affirm the trial court's order. Because the majority reverses the trial court's order, I respectfully dissent.

Patricia O. Alvarez, Justice