

# Fourth Court of Appeals

## San Antonio, Texas

### OPINION

No. 04-12-00715-CV

**MRSW MANAGEMENT LLC**,
Appellant

v.

**TEXAS DEPARTMENT OF PUBLIC SAFETY**,
Appellee

From the 345th District Court, Travis County, Texas
Trial Court No. D-1-GN-12-000860
Honorable Orlinda L. Naranjo, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:    Karen Angelini, Justice
Sandee Bryan Marion, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  May 1, 2013

AFFIRMED

This is an appeal from a district court's order affirming a "Final Decision and Recommendation" issued by the State Office of Administrative Hearings ("SOAH").  In its Final Decision, the SOAH judge concluded it did not have jurisdiction to consider the claims brought by appellant, MRSW Management, LLC ("MRSW") against appellee, the Texas Department of Public Safety ("DPS").  In two related issues on appeal to this court, MRSW asserts SOAH had jurisdiction over MRSW's claims against DPS because MRSW was a party to a contract between

the North Central Texas Council of Governments ("COG") and the State Administrative Agency ("SAA"), which is a division of DPS. We affirm.

## BACKGROUND

SAA and COG entered into a "Procurement Agreement" pursuant to which COG agreed to procure planning services for SAA "to support statewide planning efforts in areas such as grants management, risk assessment, investment justifications, strategic planning, part time grant management, and additional planning activities to be identified." The "Scope of Work" section of the Agreement states that COG "is only serving as the conduit for funding for [SAA and DPS]. . . . [COG] does not set the project standards or judge the effectiveness of the work performed. [SAA] solely retains those rights and responsibilities." The Agreement defined the relationship between the parties as "contractual in nature and . . . not to be construed to create a partnership or joint venture or agency relationship between the parties."

One of the contractors hired by COG was MRSW. MRSW is a Texas-based private information and technology contractor. COG submitted purchase orders to MRSW for the work MRSW was to perform, and MRSW submitted to COG payment invoices for its services. COG then submitted reimbursement requests to SAA to pay for the work. Many of the invoices submitted to COG by MRSW remain unpaid. As a result, MRSW sued DPS and requested that the dispute be referred to SOAH under Texas Government Code Chapter 2260. DPS challenged jurisdiction on three grounds: (1) the lack of a written contract between itself and MRSW, (2) the insufficiency of MRSW's notice of claim, and (3) the notice of claim was untimely. The SOAH judge concluded the matter should be dismissed because it concluded MRSW did not have a contract that met the definition of "contract" contained in Government Code section 2260.001(1). MRSW sought judicial review of SOAH's order. The trial court affirmed SOAH's order and this appeal followed.

**GOVERNMENT CODE CHAPTER 2260**

Unless waived, sovereign immunity protects the State from lawsuits for damages. *General Servs. Comm'n v. Little–Tex Insulation Co., Inc.*, 39 S.W.3d 591, 594 (Tex. 2001). Sovereign immunity encompasses two principles: immunity from suit and immunity from liability. *Id.* Immunity from suit bars a suit against the State unless the Legislature expressly gives consent. *Id.* Immunity from liability protects the State from judgments even if the Legislature has expressly given consent to sue. *Id.* A party may establish consent to sue by referencing a legislative statute or a resolution granting express legislative permission. *Id.* Legislative consent to sue the State must be expressed in "clear and unambiguous language." *University of Tex. Med. Branch v. York*, 871 S.W.2d 175, 177 (Tex. 1994); *see also* TEX. GOV'T CODE ANN. § 311.034 (West 2013) (codifying this standard by stating, "In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language."). The Texas Supreme Court has developed aids to help guide the analysis in determining whether the Legislature has clearly and unambiguously waived sovereign immunity, including (1) a statute that waives the State's immunity must do so beyond doubt, although the statute need not be a model of "perfect clarity," and (2) when construing a statute that purportedly waives sovereign immunity, we generally resolve ambiguities by retaining immunity. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 697 (Tex. 2003).

When the State contracts, it is liable on contracts made for its benefit as if it were a private person. *Little-Tex*, 39 S.W.3d at 594. Consequently, when the State contracts with private citizens it waives immunity from *liability*. *Id.* However, the State does not waive immunity from *suit* simply by contracting with a private person. *Id.* Legislative consent to sue is still necessary. *Id.* Such consent may be obtained in accordance with Texas Civil Practice and

Remedies Code Chapter 107. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 107.001, 107.003 (West 2011). Government Code Chapter 2260 serves as a prerequisite to seeking permission under Chapter 107 to sue the State for breach of contract. *Little-Tex*, 39 S.W.3d at 595; *see also* TEX. GOV'T CODE ANN. § 2260.005 (West 2008) ("Exclusive Procedure").

In 1999, the Legislature enacted the dispute-resolution procedure contained in Chapter 2260 to resolve certain breach-of-contract claims brought against the State. *Little-Tex*, 39 S.W.3d at 595. Chapter 2260 retains sovereign immunity from suit in breach-of-contract cases against the State but provides an administrative process to resolve those claims. *Id.* Chapter 2260 was "[i]ntended to promote mediation and settlement" between the State and its contractors. *Id.* Chapter 2260 applies to "written contract[s] between a unit of state government and a contractor for goods or services, or for a [construction] project as defined by Section 2166.001." *Id.* § 2260.001(1) (defining "contract"). Chapter 2260 defines "contractor" to mean "an independent contractor who has entered into a contract directly with a unit of state government." *Id.* at § 2260.001(2). "The term does not include: (A) a contractor's subcontractor, officer, employee, agent, or other person furnishing goods or services to a contractor; (B) an employee of a unit of state government; or (C) a student at an institution of higher education." *Id.*

Pursuant to Chapter 2260, if a contracting party believes the State has breached a written contract for goods, services, or construction, the party has 180 days to give written notice of the alleged breach to the governmental agency or unit. *See id.* §§ 2260.001(1), 2260.051(b). The agency's chief administrative officer must then examine the claim and attempt to resolve the claim through negotiation or mediation. *Id.* §§ 2260.052, 2260.056. If still unsatisfied, the contracting party may request a contested-case hearing before SOAH. *Id.* § 2260.102. If the administrative judge determines the party has a valid claim for less than $250,000, the State must

pay the claim, if possible, with money previously appropriated for breach-of-contract claims. *Id.* § 2260.105. If, however, the judge determines the party has a valid claim for more than $250,000, the judge issues a written report recommending the Legislature either appropriate funds or deny the party consent to bring suit under Civil Practice and Remedies Code Chapter 107. *Id.* § 2260.1055. The Legislature, weighing appropriate policy concerns, may accept or reject this recommendation. *Little-Tex*, 39 S.W.3d at 596.

Here, the SOAH judge dismissed MRSW's claims based on its conclusion that MRSW did not have a contract "that meets the definition of contract under Texas Government Code § 2260.001(1)." There is no dispute that a written agreement identifying MRSW as a party does not exist. The only written contract is the Procurement Agreement between SAA and COG. However, on appeal, MRSW relies on Texas agency law to argue the Procurement Agreement was "directly" "between" itself and DPS because COG was DPS's agent. MRSW contends COG acted as DPS's agent because, under the Agreement, COG was directed by DPS to hire specific contractors; COG was contractually bound to hire MRSW; and because DPS retained all authority to direct MRSW's work, it cannot change its legal relationship with COG with a "self-serving" disclaimer of any agency relationship. Therefore, MRSW concludes, DPS, as COG's principal, was a "direct" party to the contract "between" it and MRSW.

Even if we were to agree that COG was DPS's agent, resolution of which claimants the Legislature intended to include within the scope of Chapter 2260 turns on statutory construction, which presents a question of law that we review de novo. *See Texas W. Oaks Hosp., L.P. v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012). When construing a statute, our primary objective is to ascertain and give effect to the Legislature's intent. *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). To discern that intent, we begin with the statute's words. *Id.* "Where text is clear, text is determinative of that intent." *Entergy Gulf States, Inc. v. Summers*,

282 S.W.3d 433, 437 (Tex. 2009) (op. on reh'g). We rely on the plain meaning of the words, unless a different meaning is supplied by legislative definition or is apparent from context, or unless such a construction leads to absurd results. *See City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008); *see also* TEX. GOV'T CODE ANN. § 311.011 (West 2005) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage," but "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."). We further presume the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen. *In re M.N.*, 262 S.W.3d 799, 802 (Tex. 2008). The words cannot be examined in isolation, but must be viewed in the context in which they are used. *TGS–NOPEC Geophysical*, 340 S.W.3d at 441.

Chapter 2260 applies to "written contract[s] between a unit of state government and a contractor" and "contractor" is defined to mean "an independent contractor who has entered into a contract *directly* with a unit of state government." TEX. GOV'T CODE at § 2260.001(1), (2) (emphasis added). Dictionaries determine a word's common use. "Direct" means "in a direct way: as a: from point to point without deviation . . . b: from the source without interruption or diversion, [or] c: without an intervening agency or step." WEBSTER'S NINTH COLLEGIATE DICTIONARY 358 (1983). The plain meaning of the Legislature's choice of words in section 2260.001 leads us to conclude Chapter 2260 applies, not to all contractors who provide services to a unit of state government pursuant to a written contract, but only to those contractors who are named parties to that contract. This interpretation is reinforced by the statute's provision that a contractor "may make a claim against a unit of state government for breach *of a contract between* the unit of state government and the contractor." TEX. GOV'T CODE § 2260.051(a) (emphasis added). MRSW contends such an interpretation leads to an absurd result—that units

of state government would be able to shield themselves with sovereign immunity in all contract situations simply by having an agent enter into all contracts. We disagree.

Instances in which our Legislature has waived sovereign immunity are limited and narrowly defined. *Ector County v. Breedlove*, 168 S.W.3d 864, (Tex. App.—Eastland 2004, no pet.). Permission to sue must be obtained from the Legislature pursuant to the mechanism of Civil Practice and Remedies Code Chapter 107. *See* TEX. CIV. PRAC. & REM. CODE §§ 107.001, 107.003. The procedures contained in Chapter 2260 are the exclusive and required prerequisites to obtain consent to suit in accordance with Chapter 107. TEX. GOV'T CODE at § 2260.005. If the Legislature had intended to include implied contracts or contracts executed by or with agents, or to include all breach-of-contract claims that may arise under a contract with a governmental unit, it would have included such language in Chapter 2260. And, because we do not believe it is necessary to add additional language to the statute in order to give effect to the Legislature's intent, we decline to do so. Therefore, we conclude the Chapter 2260 administrative procedures available to resolve breach-of-contract claims against the State clearly and unambiguously apply only in limited circumstances: (1) for claims arising from the provision of goods or services (2) pursuant to a written contract (3) with a unit of government (4) brought by an independent contractor (5) who is a party to that same contract. Because MRSW is not a named party to the Procurement Agreement, it did not enter into a contract *directly* with DPS; therefore, the SOAH judge lacked jurisdiction over MRSW's breach-of-contract claim against DPS.

## CONCLUSION

We conclude the trial court did not err in affirming the SOAH's judge's decision. Therefore, we overrule MRSW's issues on appeal and affirm the trial court's judgment.

Sandee Bryan Marion, Justice