Opinion by: Marialyn Barnard, Justice
This is an appeal from a judgment in a breach of contract action. The underlying dispute involves property located at 803 North Cherry Street near the Hays Street Bridge ("the Cherry Street Property") in San Antonio, Texas. Appellee, the Hays Street Bridge Restoration Group ("the Group"), sued appellant, the City of San Antonio ("the City"), alleging the City breached a Memorandum of Understanding ("the Memorandum"), by failing to develop a park on the Cherry Street Property. The City filed a plea to the jurisdiction asserting governmental immunity from the Group's breach of contract claim. The trial court denied the plea and the case proceeded to trial. The trial court ultimately rendered judgment on the jury's verdict against the City and ordered specific performance in accordance with the terms of the Memorandum. On appeal, the City argues its immunity from suit on the Group's breach of contract claim had not been waived. The City further contends that even if its immunity from suit had been waived, the Memorandum is not a contract as a matter of law, or in the alternative, the evidence is legally insufficient to establish a breach of contract or injury. Because *758 we conclude the City's immunity from suit was not waived, we reverse the trial court's judgment and render judgment dismissing this cause for want of jurisdiction.
BACKGROUND
The Hays Street Bridge is a historical landmark in San Antonio.[1] Around 1982, the City closed the bridge to vehicular and pedestrian traffic due to its deteriorated condition. Thereafter, discussions about demolishing the bridge and either replacing or relocating it began. In response, a number of community groups and leaders formed what is now known as the Hays Street Bridge Restoration Group-the Group. The Group's goal was to restore and ultimately preserve the bridge for community use. Its members worked together with various engineers and architects to produce design concepts and gather construction estimates in an effort to raise money to restore the bridge.
In 2000, the Group entered into discussions with the City about the restoration project, and according to the Group, these discussions included conversations about not only restoring the bridge, but also developing the Cherry Street Property into a park. The Cherry Street Property consists of 1.7 acres and is located near the northeast side of the bridge. At the time the development discussions occurred, the Dawson family owned the Cherry Street Property.
It is undisputed that the City, with the help of the Group, applied for a federally-funded, state-administered grant under the Transportation Equity Act to restore the bridge. The application for the grant was approved, and the City received $2.89 million for the bridge restoration project, which funded eighty percent of the total project cost. Under the terms of the grant, the City was required to provide twenty percent of the total project cost-either in cash or in-kind contributions.
Before the City formally accepted the funding, the City and the Group executed the Memorandum, outlining the parties' responsibilities with regard to fund raising for the project. The Memorandum provided that the Group, via the San Antonio Area Foundation, was responsible for "[c]ontinu[ing] to raise matching funds through grant applications and other private resources" and timely transferring such funds to the City. In exchange, the City was responsible for "[e]nsur[ing] that any funds generated by [the Group] for the Hays Street Bridge go directly to the approved City of San Antonio budget, as authorized by TxDOT [Texas Department of Transportation], for the Hays Street Bridge project costs via the San Antonio Area Foundation's Hays Street Bridge Restoration Fund."
Once the Memorandum was executed, the Group focused on raising funds-both in cash and in-kind contributions-to fulfill its obligation under the Memorandum. Its efforts included obtaining the Cherry Street Property for park use. In 2007, the Dawsons donated the Cherry Street Property to the City and the City subsequently sold the property to Alamo Beer Company for commercial use. According to the City, the property was not part of the Hays Street Bridge project; rather, the bridge project was solely for purposes of restoring the bridge, not for developing a park. The City further contended that although *759 park development was not part of the project, it submitted a second application seeking state funding for the development of the Cherry Street Property for park use. However, the second application was denied.
When the Group discovered the Cherry Street Property had been sold to Alamo Beer Company, the Group sued the City, alleging the City breached its contract-the Memorandum-by failing to develop the Cherry Street Property into a park as part of the restoration project. It is undisputed that as damages, the Group sought only specific performance. The Group also sought a declaration that the City violated section 253.001(f) of the Texas Local Government Code ("the Code") when it contracted to sell the property to Alamo Beer Company because the property was "held, owned or claimed" as a park within the meaning of the statute. See TEX. LOC. GOV'T CODE ANN. § 253.001(f) (West 2016).
The City filed a plea to the jurisdiction, asserting that to the extent the Memorandum was a contract, its immunity from suit had not been waived because the Local Government Contract Claims Act ("the Act"), codified in the Code, does not provide for a waiver of immunity from suit for claims seeking specific performance. Id. §§ 271.152, 271.153. In response, the Group argued claims seeking specific performance do not preclude waiver of immunity from suit as set out in the Act. Id. § 271.152. The trial court ultimately denied the City's plea to the jurisdiction as well as its subsequent motion for summary judgment, and the parties tried the case to a jury.
Once the Group completed its presentation of evidence, the City moved for a directed verdict, a motion that essentially mirrored its prior plea to the jurisdiction and summary judgment motion. The trial court denied the motion for directed verdict, and the jury ultimately found: (1) the parties agreed to the terms of the Memorandum; (2) the word "funds" in the Memorandum included both money and in-kind donations; (3) the Cherry Street Property was subject to the terms of the Memorandum; and (4) the City failed to comply with the terms of the Memorandum with respect to the Cherry Street Property. The trial court rendered judgment on the jury's verdict and ordered specific performance in accordance with the Memorandum. The City then perfected this appeal.
ANALYSIS
On appeal, the City raises four interrelated issues, one of which implicates subject matter jurisdiction. According to the City, assuming the Memorandum is a contract, then neither the trial court nor this court has subject matter jurisdiction over this matter because the Act does not waive immunity from suit on a breach of contract claim seeking the recovery of specific performance. In the event we reject the City's jurisdictional argument, the City alternatively contends the trial court erred in denying its motion for directed verdict because: (1) the Memorandum is not a contract as a matter of law, or (2) the evidence is legally insufficient to establish a breach of contract because the Cherry Street Property was not subject to the terms of the contract and the Group did not suffer an injury.
Governmental Immunity[2]
We begin by addressing the City's contention regarding waiver of immunity.
*760 This is because "[i]mmunity 'implicates a court's subject matter jurisdiction over pending claims,' and '[w]ithout jurisdiction, the court cannot proceed at all in any cause; it may not assume jurisdiction for the purpose of deciding the merits of the case.' " Zachry Constr. Corp. v. Port of Houston Auth. of Harris Cnty. , 449 S.W.3d 98, 108 (Tex. 2014) (quoting Rusk State Hosp. v. Black , 392 S.W.3d 88, 95 (Tex. 2012) ; Fin. Comm'n of Tex. v. Norwood , 418 S.W.3d 566, 578 (Tex. 2013) ). Therefore, assuming the Memorandum is a valid contract breached by the City when it failed to develop the Cherry Street Property into a park, we must first decide whether the Act waives the City's immunity from suit on a breach of contract claim for specific performance. See ids="7258010" index="3" url="https://cite.case.law/sw3d/418/566/#p578">id.
The City contends there has been no waiver of immunity from suit because the relief sought by the Group is for specific performance, which is not a permissible award under section 271.153 of the Act. Specifically, the City argues that under the plain language of subsection (c) of section 271.153, the Legislature waived immunity from suit for breach of contract claims seeking specific performance only when the written contract concerned the sale or delivery of certain reclaimed waters. See TEX. LOC. GOV'T CODE ANN. § 271.153(c). Because the Memorandum did not concern the sale or delivery of reclaimed waters, there was no waiver of immunity. In response, the Group contends the City's reference to subsection (c) is inapplicable because subsection (c) was not in effect when the Memorandum was executed. Rather at that time, section 271.153 was silent on the recovery of specific performance, and thus, it did not prohibit the recovery of specific performance.
Standard of Review
Because governmental immunity from suit defeats a trial court's subject matter jurisdiction, it is properly asserted in a plea to the jurisdiction. State v. Holland , 221 S.W.3d 639, 642 (Tex. 2007) ; Tex. Dep't of Pub. Safety v. Alexander , 300 S.W.3d 62, 69 (Tex. App.-Austin 2009, pet. denied) (citing Tex. Dep't of Parks & Wildlife v. Miranda , 133 S.W.3d 217, 224-26 (Tex. 2004) ). "A plea questioning the trial court's jurisdiction raises a question of law that we review de novo." Holland , 221 S.W.3d at 642. In conducting our de novo review, we look to the plaintiff's petition to determine whether the facts as pled affirmatively demonstrate whether jurisdiction exists. Id. at 642-43. We must accept the allegations in the petition as true, construe them in favor of the pleading party, and examine the pleader's intent. Miranda , 133 S.W.3d at 226 ; Univ. of Tex. Health Sci. Ctr. at San Antonio v. Stevens , 330 S.W.3d 335, 337 (Tex. App.-San Antonio 2010, no pet.). We also consider any evidence relevant to jurisdiction without considering the merits of the claim beyond the extent necessary to determine jurisdiction. Miranda , 133 S.W.3d at 226-27. When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts affirmatively demonstrating the trial court's jurisdiction to hear the matter. Id. at 226. If the relevant evidence fails to raise a fact question on the jurisdictional *761 issue, the trial court rules on the plea as a matter of law. Id. at 228. In the event the pleadings are insufficient to establish jurisdiction yet do not affirmatively demonstrate an incurable defect, then the plaintiff should be afforded an opportunity to replead. Holland , 221 S.W.3d at 642.
Applicable Law
Absent an express waiver of governmental immunity, a local government entity is generally immune from suit. Id. "[I]t is the Legislature's sole province to waive or abrogate sovereign immunity." Tex. Nat. Res. Conservation Comm'n v. IT-Davy , 74 S.W.3d 849, 853 (Tex. 2002) ; see also Tooke v. City of Mexia , 197 S.W.3d 325, 332 (Tex. 2006). Legislative consent to sue must be expressed in clear and unambiguous language. IT-Davy , 74 S.W.3d at 854 ; MRSW Mgmt. LLC v. Tex. Dep't of Pub. Safety , 403 S.W.3d 503, 506 (Tex. App.-San Antonio 2013, pet. denied) ; see TEX. GOV'T CODE ANN. § 311.034 (West 2013) (codifying this standard by stating, "In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language."). The Texas Supreme Court has stated that in determining whether the Legislature has clearly and unambiguously waived immunity, courts should: (1) determine whether the statute that allegedly waives immunity does so beyond doubt, although the statute need not be a model of "perfect clarity;" and (2) resolve ambiguities in favor of immunity. MRSW Mgmt. , 403 S.W.3d at 506 (citing Wichita Falls State Hosp. v. Taylor , 106 S.W.3d 692, 695 (Tex. 2003) ).
Pertinent to this case, "[t]he Act waives immunity from contract suits for local government entities," like the City. Zachry , 449 S.W.3d at 106. Section 271.152 of the Act provides:
A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of contract, subject to the terms and conditions of this subchapter.
TEX. LOC. GOV'T CODE ANN. § 271.152 ; Zachry , 449 S.W.3d at 106. A contract is subject to the foregoing if the contract (1) is in writing, (2) contains the essential terms of the agreement; (3) is for the provision of goods or services to the local governmental entity, and (4) is properly executed on behalf of the local governmental entity. TEX. LOC. GOV'T CODE ANN. § 271.151(2)(A) ; Zachry , 449 S.W.3d at 106.
The "terms and conditions" referenced in section 271.152 can be found in the nine other sections of the Act. See Zachry , 449 S.W.3d at 106. Specifically, section 271.153 of the Act sets out the types of awards available to a party in an action pursuant to section 251.152. See TEX. LOC. GOV'T CODE ANN. § 271.153 ; Zachry , 449 S.W.3d at 106. Section 271.153 was amended several times in 2009, 2011, and 2013 to allow for additional types of recovery; therefore, for the purposes of this opinion, we will reference the version in effect at the time the suit was filed on December 6, 2012.[3] See *762 Sharyland Water Supply Corp. v. City of Alton , 354 S.W.3d 407, 412 n.5 (Tex. 2011). At that time, subsection (a) of section 271.153 limited recovery to "the balance due and owed ... under the contract," "the amount owed for change orders or additional work ... in connection with the contract," and "interest, as allowed by law...." TEX. LOC. GOV'T CODE ANN. § 271.153(a). Subsection (b) of section 271.153 further limited recovery by excluding certain "consequential damages," "exemplary damages," or "damages for unabsorbed home office overhead." Id. § 271.153(b).
To determine whether section 271.153 provided for the recovery of specific performance-and therefore, waived governmental immunity-we must also consider the rules of statutory construction. When construing a statute, courts must give effect to the Legislature's intent. BCCA Appeal Grp., Inc. v. City of Houston, Tex. , 496 S.W.3d 1, 8 (Tex. 2016). To determine the Legislature's intent, courts must start with the plain language of the statute and view the statute as a whole-not simply review isolated provisions. Id. , Molinet v. Kimbrell , 356 S.W.3d 407, 411 (Tex. 2011). The plain meaning of the text is the best expression of legislative intent. BCCA Appeal Grp., Inc. , 496 S.W.3d at 8 ; Molinet , 356 S.W.3d at 411. Moreover, when a statute is unambiguous, courts "adopt the interpretation supported by the plain language unless such an interpretation would lead to absurd results." TGS-NOPEC Geophysical Co. , 340 S.W.3d at 439.
Application
Here, section 271.153 plainly defines the type of awards a party may recover, i.e., for which immunity is waived. Subsection (a) sets out the types of awards available to a party while subsection (b) excludes the types of awards available to a party. TEX. LOC. GOV'T CODE ANN. §§ 271.153(a), (b). There is nothing in the plain language of section 271.153 that provides for a waiver of immunity from a suit seeking to impose specific performance for breach of a contract. See id. Resolving any ambiguities in favor of immunity, we conclude that by not permitting the recovery of specific performance, the Act does not clearly or unambiguously waive immunity from suit for breach of contract claims seeking specific performance. See IT-Davy , 74 S.W.3d at 854 ; MRSW Mgmt. , 403 S.W.3d at 506.
This interpretation is supported by the supreme court's recent decision in Zachry Constr. Corp. v. Port of Houston Auth. of Harris Cnty., 449 S.W.3d at 108. In that case, the supreme court held the scope of section 271.152's waiver of immunity was limited by the damages provided in section 271.153. Id. at 109 (" Section 271.152 merely uses Section 271.153 to further define to what extent immunity has been waived."). In other words, "the waiver does not allow recovery beyond that permitted by section 271.153." Id. at 108. Nowhere in section 271.153 is the recovery of specific performance permitted. Yet, the only damages claimed by the Group (and the only damages awarded by the trial court) was specific performance.[4] Accordingly, because *763 the Group did not claim damages within section 271.153's limitations, we hold the City's immunity from suit on the Group's breach of contract claim has not been waived. See ids="6898922" index="39" url="https://cite.case.law/sw3d/449/98/#p108">id.
Remand or Render
In the event we hold immunity is not waived for the Group's breach of contract claim seeking the recovery of specific performance, the Group asserts we must remand the case to allow it an opportunity to amend its petition. For support, the Group relies on Wasson Interests, Ltd. v. City of Jacksonville , 489 S.W.3d 427 (Tex. 2016), which holds a city does not have immunity from suit for proprietary acts. According to the Group, based on that holding, it should be afforded an opportunity to amend its petition to demonstrate how the City's functions under the Memorandum were proprietary. We disagree.
The proprietary-governmental dichotomy referred to by the Group has long been used to determine a municipality's immunity from suit. See Wasson , 489 S.W.3d at 434 ; Tooke , 197 S.W.3d at 343. In Tooke v. City of Mexia , the supreme court stated: "A municipality is not immune from suit for torts committed in the performance of its proprietary functions, as it is for torts committed in the performance of its governmental functions." 197 S.W.3d at 343. Wasson extended this distinction to breach of contract claims. See 489 S.W.3d at 439. The supreme court has also reasoned that when determining whether a function is governmental or proprietary, we may look to the functions listed in the Texas Tort Claims Act even in cases involving breach of contract claims. See Tooke , 197 S.W.3d at 343-44 (pointing out that for purposes of tort liability, the Legislature has statutorily defined governmental functions, and "we see no reason to think that the classification would be different under the common law.").
The Texas Tort Claims Act lists thirty-six functions as governmental, including "bridge construction and maintenance" and "community development or urban renewal activities." See TEX. LOC. GOV'T CODE ANN. §§ 101.0215(4), (34); Tooke , 197 S.W.3d at 343-44. We conclude these functions describe the City's obligations as set forth in the Memorandum. Here, the City agreed to ensure the funds generated by the Group were dedicated to the Hays Street Bridge project-in other words, the restoration of the Hays Street Bridge, even assuming that project included park development. Accordingly, remand would serve no legitimate purpose because the mere pleading of more facts would not overcome the governmental nature of the City's functions under the Memorandum. See Tex. A & M Univ. Sys. v. Koseoglu , 233 S.W.3d 835, 840 (Tex. 2007). We therefore hold that because the City's functions under the Memorandum are purely governmental, the City is immune from suit.
Accordingly, because the City's argument-that there is no waiver of immunity-is dispositive, we need not address the remainder of the City's issues.
CONCLUSION
Based on the foregoing, we hold that even assuming the Memorandum was a contract the City breached by failing to develop the Cherry Street Property into a *764 park, the City's immunity from suit on the Group's breach of contract claim was not waived under the Act because the Group did not claim recovery within the Act's limitations. We further hold that because the Memorandum concerned a governmental function as opposed to a proprietary function, the City was immune from suit on the Group's breach of contract claim, and remanding for repleading could not cure the jurisdictional defect. Accordingly, we reverse the judgment of the trial court and render judgment dismissing this cause for want of jurisdiction.

The bridge's historical significance has been recognized by numerous groups, including: (1) the State of Texas, recognizing the bridge as a Texas Historic Civil Engineering Landmark; (2) the City of San Antonio, recognizing the bridge as a historic structure; and (3) the Heritage Bridge Foundation and Texas Historical Commission, recognizing it as a historic bridge. Most recently, the bridge was designated as part of the National Register of Historical Places.

Parties, and sometimes courts, use the phrases "sovereign immunity" and "governmental immunity" interchangeably. However, the phrase "sovereign immunity" applies to various divisions of state government, e.g., agencies, boards, hospitals, and universities. Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund , 212 S.W.3d 320, 324 (Tex. 2006) ; City of San Antonio v. Valemas, Inc. , No. 04-11-00768-CV, 2012 WL 2126932, at *3 n.2 (Tex. App.-San Antonio June 13, 2012, no pet.) (mem. op.). On the other hand, the phrase "governmental immunity" is applicable to political subdivisions of the state, e.g., cities, counties, and school districts. Ben Bolt-Palito Blanco , 212 S.W.3d at 324 ; Valemas , 2012 WL 2126932, at *3. Because the City is the relevant party in this appeal, we will use the phrase "governmental immunity" when discussing immunity. Ben Bolt-Palito Blanco , 212 S.W.3d at 324 ; Valemas , 2012 WL 2126932, at *3.

We note that during the pendency of this case, section 251.153 was amended in 2013 to allow for the recovery of specific performance in breach of contract claims concerning the sale or delivery of certain reclaimed waters; however, that amendment is inapplicable to this case because it took effect on June 14, 2013, and applies only to contracts executed on or after that date. See Act of May 24, 2013, 83rd Leg., R.S., ch. 1138, § 3, 2013 Tex. Gen. Laws 2756, 2758 (codified at Tex. Local Gov't Code Ann. § 271.153(c) ). Here, it is undisputed the Memorandum was executed on June 4, 2002.

We recognize that in the Group's first amended petition, the Group requested monetary damages. However, nowhere in its response to its plea to the jurisdiction, its appellate brief, or during oral argument does the Group mention its request for monetary damages or specify the type of monetary damages sought, particularly whether those damages fall within subsection (a)'s limitations. See Tex. Loc. Gov't Code Ann. § 271.153(a) (stating only monetary damages available under the Act are limited to the "the balance due and owed ... under the contract," "the amount owed for change orders or additional work ... in connection with the contract," and "interest, as allowed by law...."). Rather, in its brief, the Group argues the only relief sought was specific performance, and such recovery falls within the Act, which provides for waiver of immunity. Moreover, in its prayer on appeal, the Group requests this court to uphold the jury verdict-which awarded specific performance. See G & H Towing Co. v. Magee , 347 S.W.3d 293, 298 (Tex. 2011) ; Garza v. Cantu , 431 S.W.3d 96, 108 (Tex. App.-Houston [14th Dist.] 2013, pet. denied) (stating appellate court may only grant relief clearly requested in appellate brief). Accordingly, we construe the Group's request for relief as limited to the relief awarded by the jury-specific performance.