# Supreme Court of Texas

No. 22-0649

San Jacinto River Authority,
*Petitioner*,

v.

City of Conroe, Texas and City of Magnolia, Texas,
*Respondents*

On Petition for Review from the
Court of Appeals for the Ninth District of Texas

**Argued January 9, 2024**

JUSTICE BUSBY delivered the opinion of the Court.

These parties to water sales contracts are before the Court for a second time.  Unlike a typical contract dispute, all the parties here are government entities with immunity from suit.  So far, their taxpayers and ratepayers have been funding only procedural and jurisdictional skirmishes distantly related to the merits of the dispute.

Today's legal skirmish concerns the scope of the statutory waiver of immunity for contractual claims against local government entities. The contracts at issue obligate two cities to buy surface water from a

river authority. When a dispute over fees and rates arose, the cities stopped paying their complete balances, and the authority sued the cities to recover those amounts. The trial court granted the cities' plea to the jurisdiction, and the court of appeals affirmed on the ground that the authority did not engage in pre-suit mediation as the contracts required.

We hold that contractual procedures for alternative dispute resolution, which are enforceable against local governments under section 271.154 of the Local Government Code, do not serve as limits on the waiver of immunity set out in section 271.152. Nor does the parties' agreement to mediate apply to the authority's claims. We also reject the cities' alternative position that the agreements do not fall within the waiver because they fail to state their essential terms. Accordingly, we reverse and remand to the trial court for further proceedings to resolve the authority's claims on the merits.

## BACKGROUND

As we explained in more detail in our last opinion involving these parties, the Legislature created the Lone Star Groundwater Conservation District to address concerns about the growing population in Montgomery County and that region's reliance on groundwater. *See City of Conroe v. San Jacinto River Auth.*, 602 S.W.3d 444, 448 (Tex. 2020). Lone Star developed a Regulatory Plan to reduce groundwater usage. The Regulatory Plan encourages water providers to work together to reduce groundwater usage, establishes goals for groundwater use reduction, and requires water providers to report on their groundwater use. Under the Regulatory Plan, Lone Star set

2

groundwater pumpage limits for all high-volume groundwater users in Montgomery County, including cities and other utilities.

Petitioner San Jacinto River Authority (SJRA), a preexisting entity, developed a groundwater reduction plan (GRP) to draw surface water from Lake Conroe—which it controls—and sell the water to cities and utilities to help them comply with Lone Star's Regulatory Plan. SJRA invited all water providers in Montgomery County to participate so that they could share the costs and benefits of transitioning from groundwater use to surface water use. Under the GRP, SJRA would design, construct, and operate a treatment plant and related systems, which it would finance by issuing over $550 million in bonds.

Many cities and utilities within Lone Star's district, including Respondents Conroe and Magnolia, opted to join the GRP and signed decades-long contracts with SJRA. These GRP contracts secured SJRA's outstanding bonds. By entering into the contracts, the participants sought to reduce the overall cost of complying with Lone Star's Regulatory Plan while obtaining favorable financing terms.

Certain features of the GRP contracts are in dispute. As relevant here, these features include: procedural and substantive requirements that SJRA must follow in setting the price of water, limits on SJRA's authority to set the quantity of water a municipality or utility must take, and procedures for handling different types of defaults. The GRP contracts provide that a "payment default" occurs when any party "fails to timely pay any fees, rates, charges, or other amounts due" under the GRP contracts. A "performance default" occurs when any party "fails to perform or is in breach or violation of any of its other obligations" under

3

the GRP contracts. The contracts require the parties to engage in pre-suit mediation for performance defaults but not payment defaults.

SJRA began supplying water under the GRP contracts in 2015. Conroe received water from SJRA, but Magnolia did not. Conroe paid for the surface water it took from SJRA, and both it and Magnolia paid "pumpage fees" as required by their GRP contracts. When SJRA increased both water rates and pumpage fees in 2017, Conroe and Magnolia (collectively, the Cities) objected. The Cities have short-paid SJRA—refusing to pay the new higher rates or fees—ever since. *See Conroe*, 602 S.W.3d at 449-450.

Meanwhile, several utilities and cities sued Lone Star and its officials, seeking to invalidate the Regulatory Plan that had motivated the GRP contracts. The trial court in that case signed a final judgment invalidating the pumpage limits contained in the Regulatory Plan, concluding that the limits were made "without legal authority and consequently [were] . . . unlawful, void, and unenforceable." But the trial court left the remainder of the Regulatory Plan in place.[1]

As for the GRP contracts, SJRA initially responded to the Cities' partial refusal to pay by suing them in Travis County under the Expedited Declaratory Judgments Act, which resulted in the parties' first visit to this Court in 2020. *Id.* at 450. We held that SJRA could

---

[1] The parties to the Lone Star suit reached a settlement while the case was on interlocutory appeal. *See Lone Star Groundwater Conserv. Dist. v. City of Conroe*, No. 09-18-00383-CV, 2019 WL 611519 (Tex. App.—Beaumont Feb. 14, 2019, no pet.) (dismissing appeal due to settlement). The final judgment was the product of that settlement. No issues regarding the validity of the Regulatory Plan are before us.

4

obtain declarations regarding the valid execution of the GRP contracts but not regarding compliance with those contracts. *Id*. at 448, 458-59.

While that suit was pending, several private utilities sued SJRA in Montgomery County for breach of GRP contracts. SJRA brought counterclaims against the utilities and third-party claims against the Cities, alleging they breached the contracts by failing to pay the required rates and fees.

The Cities then filed the pleas to the jurisdiction at issue here, arguing that their immunity had not been waived under the Local Government Contract Claims Act (the Act)—sections 271.151 through 271.160 of the Local Government Code—for two reasons: SJRA failed to submit its claims to pre-suit mediation, and the GRP contracts failed to state their essential terms. The trial court ordered the parties to confer regarding mediation, but no party asked the court to order mediation. The court eventually granted the pleas and dismissed SJRA's claims against the Cities, though without ordering a severance.

SJRA filed an interlocutory appeal, and the court of appeals affirmed. The court held that the waiver of immunity in section 271.152 of the Act is limited by section 271.154, which provides that dispute adjudication procedures stated or incorporated in the contract are enforceable, and that immunity was not waived because SJRA failed to engage in pre-suit mediation as required by the GRP contracts. The court did not reach the issue of essential terms. 683 S.W.3d 1, 12-13 (Tex. App.—Beaumont 2022). SJRA then filed a petition for review, which we granted.

5

SJRA raises three issues in its petition. First, it argues that contractually agreed procedures for adjudicating disputes, such as the pre-suit mediation requirements in the GRP contracts, do not limit the Act's waiver of a local government entity's immunity. Second, SJRA contends that its claims are not covered by the contracts' pre-suit mediation requirements. Third, SJRA asserts that the GRP contracts state their essential terms, so the Act's waiver of governmental immunity applies. We address each issue in turn. Because these issues concern whether governmental immunity has been waived, we review them de novo. *Fraley v. Tex. A&M Univ. Sys.*, 664 S.W.3d 91, 97 (Tex. 2023).

## I. Contractual adjudication procedures made enforceable by section 271.154 are not limitations on section 271.152's waiver of immunity.

Governmental units, including political subdivisions like municipalities and river authorities, are generally immune from suit absent a legislative waiver. *City of San Antonio v. Maspero*, 640 S.W.3d 523, 528 (Tex. 2022). Whether governmental immunity has been waived in a given case implicates subject-matter jurisdiction. *Univ. of Tex. M.D. Anderson Cancer Ctr. v. McKenzie*, 578 S.W.3d 506, 512 (Tex. 2019). In response to SJRA's claims under the contracts, the Cities filed pleas to the jurisdiction asserting that their governmental immunity has not been waived. We begin our analysis by considering the Cities' argument that contractual dispute-resolution procedures made enforceable by

section 271.154 of the Act limit the scope of the immunity waiver in section 271.152.

> **A.** **When section 271.152 waives immunity for adjudicating a claim, section 271.154 provides that the waiver includes enforcement of agreed procedures for that adjudication.**

The Act's waiver of immunity for certain breach-of-contract suits against local government entities "alter[ed] decades of one-sided bargains, in which local governments were wholly immune from breaches of their obligations." *San Antonio River Auth. v. Austin Bridge & Rd., L.P.*, 601 S.W.3d 616, 625 (Tex. 2020). Section 271.152 provides that when a local government entity authorized to make contracts—including a city or a river authority—"enters into a contract" for goods or services that meets certain requirements, that entity "waives sovereign immunity to suit *for the purpose of adjudicating a claim* for breach of the contract, subject to the terms and conditions of [the Act]." TEX. LOC. GOV'T CODE § 271.152 (emphasis added); *see id.* § 271.151(2), (3) (defining which contracts and local government entities are covered). In situations where this waiver applies, section 271.154 recognizes that the parties may state or incorporate in their contract "[a]djudication procedures"—that is, procedures for adjudicating the breach-of-contract claim expressly permitted by section 271.152—and provides that those procedures generally "are enforceable" by a court or arbitrator. *Id.* § 271.154.

In effect, the Act establishes an order of operations: if the waiver of immunity in section 271.152 applies to the claim for breach of contract, then the contractual procedures for adjudicating that claim

7

referenced in section 271.154 are enforceable. This understanding is supported by our opinion in *Zachry Construction Group v. Port of Houston Authority*, where we recognized that section 271.154 relates "to the litigation and adjudication of a claim" rather than to "the scope of immunity," and that the concluding "subject to" phrase in section 271.152 "does not preclude . . . other contractual procedures." 449 S.W.3d 98, 107-08 (Tex. 2014); *see also Austin Bridge*, 601 S.W.3d at 625 ("Before [the Act], there was no 'adjudication' of a contract claim against a local government. Now, a local government can be held to promises made within the chapter's framework." (citation omitted)).

The Cities and the court of appeals point out that we have also referred to the other provisions of the Act collectively as "limitations on the waiver of immunity." *Hays St. Bridge Restoration Grp. v. City of San Antonio*, 570 S.W.3d 697, 706 (Tex. 2019) (quoting *Zachry*, 449 S.W.3d at 108). On that basis, the court of appeals held that "to show waiver of immunity, a claimant must plead facts showing that conditions of section 271.154 have been met." 683 S.W.3d at 12 (quoting *Mission Consol. Indep. Sch. Dist. v. ERO Int'l, LLP*, 579 S.W.3d 123, 128 (Tex. App.—Corpus Christi—Edinburg 2019, no pet.)). We disagree.

Nothing in section 271.154 indicates that it is narrowing section 271.152's waiver of immunity to exclude cases in which parties have not complied with the agreed-upon adjudication procedures. Instead, section 271.154 provides that such procedures—which may include "requirements for . . . engaging in alternative dispute resolution proceedings before bringing a suit"—"are enforceable." TEX. LOC. GOV'T CODE § 271.154. The word "enforceable" makes clear that the waiver of

8

immunity for a court or arbitrator to adjudicate the claim includes the ability to require parties to comply with their agreed procedures for that adjudication.

If there were no waiver of immunity, local government entities could enforce agreements for mandatory pre-suit alternative dispute resolution (ADR) against private parties, but the reverse would not be true. Section 271.154 ensures that under the waiver, both sides are on equal footing so that private parties can similarly enforce pre-suit ADR agreements against local government entities. As we said in *Austin Bridge*, this section "is better read to authorize contracting parties to devise methods for dispute resolution in their contracts for claims *now viable* through the subchapter's limited waiver of immunity." 601 S.W.3d at 625 n.45 (emphasis added).

In contrast, the court of appeals' interpretation would thwart enforcement of contractual ADR and other agreed adjudication procedures. Absent a waiver of immunity, a court lacks subject-matter jurisdiction and must dismiss the suit—it cannot order the parties to engage in ADR procedures. The Cities maintain that courts can, in some sense, enforce the agreed-upon mediation procedure by dismissing SJRA's claims, but that view is contrary to the common understanding of the word "enforceable." The Legislature's choice of that word signals that enforcement of agreed adjudication procedures falls within the scope of section 271.152's waiver of immunity for adjudicating the claim for breach of contract, enabling a court or arbitrator to order compliance with those procedures.

9

**B. Section 311.034 of the Government Code is inapplicable because these adjudication procedures are neither statutory nor a prerequisite to suit.**

In support of its contrary holding, the court of appeals cited section 311.034 of the Government Code, which provides that "[s]tatutory prerequisites" to suit "are jurisdictional requirements in all suits against a governmental entity." TEX. GOV'T CODE § 311.034; *see* 683 S.W.3d at 12 n.48. We conclude that this statute does not apply to section 271.154 of the Local Government Code because contractually selected adjudication procedures are not statutory and their enforcement by a court would necessarily occur after suit is brought.

Although section 271.154 is a statute, it simply provides that certain agreements to adjudication procedures are enforceable by a court or arbitrator; those procedures need not be prerequisites to suit. Here, the parties did agree to mediate certain claims prior to suit, but that agreement is a contractual prerequisite, not a statutory one. And as this case shows, a court must determine after suit is filed whether a party was required to comply with the mediation procedure—including disputes about whether the claim was within the procedure's scope and any defenses to the procedure's application, as well as what the proper remedy would be for failure to comply. For example, that remedy could be an order compelling mediation—perhaps coupled with abatement of the ongoing suit—rather than dismissal,[2] which further demonstrates

---

[2] *Cf. In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d 404, 412 & n.5 (Tex. 2011) (holding contractual requirement that parties engage in appraisal process for dispute resolution before filing suit is enforceable by motion to compel but declining to order abatement of pending suit); *In re U.S.*

10

that compliance with the procedure is not an absolute prerequisite to suit.

For these reasons, we conclude that compliance with any contractually agreed adjudication procedures is not a condition precedent to the waiver of immunity in section 271.152. Section 271.154 provides that a court or arbitrator may enforce those procedures, not that it must dismiss a claim for breach of contract unless a party complies with them.

## II.     SJRA's claims were for payment defaults, so the pre-suit mediation procedures in the GRP contracts do not apply.

The Cities' argument that SJRA's claims should be dismissed for failure to comply with the contractual pre-suit mediation procedure also falls short because that procedure does not apply to these claims. The GRP contracts require mediation of claims for "performance default" but not claims for "payment default." A payment default occurs when a party "fails to timely pay any fees, rates, charges, or other amounts due." A performance default occurs when a party "fails to perform or is in breach or violation of any of its other obligations" under the contracts.

In determining whether the type of default claimed by SJRA triggered the pre-suit mediation requirement, the court of appeals looked in part to "allegations between the parties"—that is, beyond SJRA's claims for breaches by the Cities to allegations regarding

---

*Home Corp.*, 236 S.W.3d 761, 764 (Tex. 2007) (finding no indication in contract that parties who agreed to mediate prior to arbitration intended to dispense with arbitration if mediation did not occur first, although defendant could have sought to delay arbitration pending mediation).

breaches by SJRA. 683 S.W.3d at 11. But jurisdiction is determined on a claim-by-claim basis. *Heckman v. Williamson County*, 369 S.W.3d 137, 152-53 (Tex. 2012). Accordingly, we focus on the "nature" or "gravamen" of SJRA's third-party claims against the Cities to determine whether those claims fall under the GRP contracts' mandatory pre-suit ADR procedure. *In re Breviloba, LLC*, 650 S.W.3d 508, 512 (Tex. 2022).

SJRA alleged that the Cities "breached their respective GRP contracts by refusing to pay the GRP rates adopted in accordance with their GRP contracts." These claims fall within the contracts' definition of "payment default" because they concern a failure to pay rates due. The court of appeals noted that SJRA has also alleged a "controversy . . . between the parties concerning the compliance of SJRA's rates with the GRP Contracts." But SJRA is asserting that it did *not* default in setting those rates, which is a necessary predicate for its claim that the Cities *did* default by failing to pay them. SJRA does not allege any other basis for relief and does not contend that the Cities face liability for any reason other than their failure to remit the full payment due under the GRP contracts' rate and fee provisions. Thus, the contracts did not require SJRA to mediate its claims before filing suit, which confirms that the courts below erred in holding that the Cities were entitled to dismissal based on SJRA's failure to mediate.

## III. Because the GRP contracts state their essential terms, executing them waived the Cities' immunity.

As relevant here, the Act limits its waiver of immunity to properly executed "written contract[s] stating the essential terms of the agreement for providing goods or services to the local governmental

12

entity." TEX. LOC. GOV'T CODE § 271.151(2)(A). The Cities argue that their contracts with SJRA do not state their essential terms, which provides a separate reason that their immunity has not been waived under section 271.152.

Although the court of appeals did not address this issue, the Cities raised it in their plea to the jurisdiction, which the trial court granted. Because this issue of law relates to jurisdiction and reaching it now will help resolve the remainder of this litigation efficiently, we address the issue ourselves rather than remanding for the court of appeals to do so. *See Jones v. Turner*, 646 S.W.3d 319, 325 (Tex. 2022).

> **A.** **A contract states its essential terms if it satisfies the common law and complies with the Act's requirements.**

We have explained that the Act's reference to "essential terms" incorporates the requirements of the common law. *See Dall./Fort Worth Int'l Airport Bd. v. Vizant Techs.*, 576 S.W.3d 362, 368-69 (Tex. 2019) (citing *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016)). For example, the common law addresses which terms must be stated: those that are "basic obligations" of the type of contract at issue, as well as particular terms that the parties to the specific contract would reasonably regard as "vitally important ingredients of their bargain." *Campbellton Rd., Ltd. v. City of San Antonio*, ___ S.W.3d ___, ___, No. 22-0481, slip op. at 20 n.63 (Tex. Apr. 12, 2024) (quoting *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 838 (Tex. 2010), and *Vizant Techs.*, 576 S.W.3d at 369). The common law also speaks to how these terms must be stated: with "a reasonable degree of certainty and definiteness" sufficient to confirm the parties' intent to be

13

bound, and to "enable a court to understand and enforce" the obligations "and provide an appropriate remedy when breached." *Vizant Techs.*, 576 S.W.3d at 369 (citing *Fischer*, 479 S.W.3d at 237).

The Cities argue that this interpretation renders the language "essential terms" surplusage because the Act applies only to contracts, which already must state their essential terms to be enforceable. The alternative offered by the Cities is that the Act requires a higher, but unspecified, standard for a contract to state its essential terms. We adhere to our precedent and reject this alternative.

When the Legislature uses language that tracks the common law, we generally infer that the Legislature intended to import the common-law understanding of that language. *Sampson v. Univ. of Tex.*, 500 S.W.3d 380, 387 (Tex. 2016). Accordingly, we have held that the Legislature's use of essential-terms language in section 271.151 was meant to import the common-law understanding of that language—namely, the common-law requirements for determining which terms must be included and whether those terms are stated with sufficient clarity that they can be enforced.[3]

Contrary to the Cities' argument, the reference to essential terms is not surplusage. The Act requires that a contract state some additional terms that the common law might not: the contract must be for goods or services, must be properly executed on behalf of a local government

---

[3] As we explain further below, this reference to "enforced" should not be read to suggest that a contractual right must ultimately be enforceable or that any defenses to enforcement must be disproved before immunity will be waived. *See Campbellton Rd.*, No. 22-0481, slip op. at 23-24; *El Paso Educ. Initiative, Inc. v. Amex Props., LLC*, 602 S.W.3d 521, 534 n.66 (Tex. 2020).

14

entity, and must be in writing. *See* TEX. LOC. GOV'T CODE § 271.151(2)(A). Those additional terms are likewise essential for a contract to be "subject to this subchapter"—that is, to trigger a waiver of immunity.

The Cities also fail to point to an alternative ordinary meaning for the essential-terms requirement. To construct a new standard out of whole cloth based only on the statute's reference to essential terms would surely fail to comport with our preference for "ordinary meaning [over] an unusual meaning that would avoid surplusage." *Stephens v. Beard*, 485 S.W.3d 914, 918 (Tex. 2016) (citation and internal quotation marks omitted). Moreover, the Cities' interpretation is circular. In the Cities' view, a contract must state its essential terms even if it would be enforceable at common law without those terms. But that makes no sense: the concept of "essential" terms only has relevance in our law in determining whether the contract is enforceable. *See Vizant Techs.*, 576 S.W.3d at 368-69.

With this standard in mind, we turn to the Cities' specific arguments that the GRP contracts do not state their "essential terms."

**The price term.** The Cities first contend that the GRP contracts' use of SJRA's rate orders as a price-setting mechanism renders the essential price term too indefinite to be enforced. But the GRP contracts offer a detailed set of procedural and substantive limitations on how prices are to be set. These limitations include requirements that rates must be as low as possible while being "consistent with good management practices," "necessary and proper" under certain provisions of the contracts, "consistent with [SJRA's] statutory and

15

constitutional duties," and "just, reasonable, and nondiscriminatory." In addition, rates may be charged only to recoup the categories of expenses listed in the GRP contracts.

These limitations, among others, provide sufficient guidance for a court to determine whether SJRA complied with the GRP contracts' rate-setting requirements. *See Fischer*, 479 S.W.3d at 237 ("[T]he agreement's terms must also be sufficiently definite to enable a court to understand the parties' obligations, and to give an appropriate remedy if they are breached." (citations and internal quotation marks omitted)). Accordingly, the price term is sufficiently definite.

**The quantity term.** Conroe also argues that the quantity term in its GRP contract is too indefinite to enforce.[4] In addition to signing a GRP contract, Conroe and SJRA signed a supplemental agreement that addresses quantity. The GRP contract allows SJRA to set the minimum quantity of water that Conroe must take from SJRA. Then, the GRP contract and supplemental agreement together set a floor on that minimum ("not less than sixty percent . . . of aggregate total groundwater usage of the City during calendar year 2009 according to the official records of the Conservation District"), as well as a ceiling on that minimum ("an amount equal to ninety percent . . . of the average daily amount of groundwater . . . supplied from any such site during the

---

[4] Magnolia has not argued that the quantity term of its GRP contract is indefinite, so we do not address that issue. Indeed, the quantity term in Magnolia's GRP contract applies only if Magnolia begins taking surface water from SJRA, which it has not yet done. Magnolia must still pay pumpage fees, but those fees are not tied to any quantity of water taken from SJRA and have not been challenged as indefinite.

16

low-demand period preceding the date of calculation of the Contract Quantity"). The supplemental agreement also provides that SJRA will give "due deference" to Conroe's director of public works and his "preferences and decisions" in setting the minimum. Under the GRP contract and the supplemental agreement, Conroe is free to take more than that minimum as its needs require.

Taken together, these provisions provide enough guidance for a court to determine whether SJRA complied with its requirements in setting the contract quantity. Indeed, courts routinely uphold requirements contracts, in which there is no set quantity term and the conduct of the parties determines the quantity they are required to give or take. *See, e.g.*, *Pace Corp. v. Jackson*, 284 S.W.2d 340, 345 (Tex. 1955). Accordingly, the quantity term in Conroe's GRP contract and supplemental agreement is sufficiently definite.

Conroe also argues that the quantity term's definiteness was undermined post-contract by the separate court judgment invalidating Lone Star's groundwater pumpage limits. But the quantity provisions of the GRP contract and supplemental agreement are not directly tied to the groundwater pumpage limits. Instead, they reference Lone Star's Regulatory Plan as a whole. Yet even if the quantity term were tied to those limits, that fact would not support the conclusion that the contract fails to state its essential terms.

The language of section 271.152 reveals that whether there is a "contract"—including essential terms—is a question asked at the time of formation. *See Campbellton Rd.*, No. 22-0481, slip op. at 13-15. Section 271.152 provides that immunity is waived when an authorized

17

government entity "enters" into a contract subject to the Local Government Code, and section 271.151(2)(A) requires that the contract "stat[e]" its essential terms. Accordingly, the relevant time for determining an immunity waiver is the time of contract formation, and courts evaluate compliance with the "essential terms" requirement based on the state of the contract at that time. *See also* RESTATEMENT (SECOND) OF CONTRACTS § 33 (AM. L. INST. 1981) (listing certainty of contractual terms as element of formation).

Of course, later events could render the contract unenforceable on the merits, but that does not affect whether there was—at formation— a contract stating its essential terms for purposes of the immunity waiver. *See Campbellton Rd.*, No. 22-0481, slip op. at 23-24; *El Paso Educ. Initiative, Inc. v. Amex Props., LLC*, 602 S.W.3d 521, 534 n.66 (Tex. 2020) (explaining that our precedent does not "require that a contract ultimately be enforceable to clear the jurisdictional hurdle"). For example, a contract could be held to be unconscionable, or a court might find that a condition precedent to an obligation has not been satisfied, thus rendering a contract unenforceable even though there was a contract stating its essential terms at formation. Similarly, the failure of an initially definite term may simply present grounds for a court to reform the contract or else substitute a reasonable term, such as when a bank rate that the parties selected as a reference point for interest later becomes unavailable. *See, e.g.*, *Bailey, Vaught, Robertson & Co. v. Remington Invs., Inc.*, 888 S.W.2d 860, 866-67 (Tex. App.— Dallas 1994, no writ); *F.D.I.C. v. Ambika Inv.*, No. 94-10287, 1994 WL

18

708818, at *2-3 (5th Cir. Dec. 1, 1994); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 204.

Ultimately, as long as the contract meets the common-law "essential terms" standard and the Act's other stated requirements at the time it is formed, that is enough to show a waiver of immunity. Because those requirements were met here as we have explained, the court of appeals erred in affirming the trial court's order granting the Cities' pleas to the jurisdiction.

## CONCLUSION

Contractual ADR provisions and other agreed adjudication procedures made enforceable against local governments by the Act's waiver of sovereign immunity do not serve as limits on that waiver. And in any event, the parties' agreement to pre-suit mediation did not apply to SJRA's claims. In addition, the GRP contracts sufficiently state their essential terms as required by the common law and the Act. We therefore hold that the Act waived the Cities' immunity when they entered into the GRP contracts, and we reverse the court of appeals' judgment and remand the case to the trial court for further proceedings to resolve SJRA's claims on the merits.

J. Brett Busby
Justice

**OPINION DELIVERED:** April 12, 2024

19